[Civ. No. 23153.    Second Dist., Div. Three.    July 30, 1958.]

THOMAS E. CHAPMAN, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; EASTMAN OIL WELL SURVEY COMPANY (a Corporation), Real Party in Interest.

*Assigned by Chairman of Judicial Council.

Winston & Winston for Petitioner.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Assistant County Counsel, for Respondent.

Houser & Beam for Real Party in Interest.

PATROSSO, J. pro tem.*—Mandate to review the action of the respondent court in denying petitioner's motion to quash service of summons.

Eastman Oil Well Survey Company, hereinafter referred to as plaintiff, instituted an action against the petitioner in the Superior Court of Los Angeles County on September 17, 1957, wherein it seeks damages and an injunction to restrain petitioner, a former employee, from divulging and making available to plaintiff's former customers trade secrets, knowledge of which he acquired by reason of his employment. From the allegations of the complaint it appears that the cause of action therein pleaded arose during the month of June 1957. Upon the filing of the complaint plaintiff applied for an order for the publication of summons supported by an affidavit stating that the petitioner was a resident of Trinidad, British West Indies. The court made such an order, and the record discloses that petitioner was personally served with summons in the action in Trinidad on November 27, 1957. Thereafter petitioner made a motion to quash the service of summons and vacate the order of publication on the ground that petitioner was not a resident of the county of Los Angeles at the time the cause of action arose nor at the time of the commencement of the action nor at the time of the service of summons, which motion, as previously indicated, was denied.

The question presented is whether the evidence before the trial court, in the form of affidavits, is sufficient to sustain its finding that defendant was a "resident" of the State of California at the time the cause of action pleaded in plaintiff's complaint arose.

■ At the outset it should be noted that the word "resident" in section 417 of the Code of Civil Procedure, with

*Assigned by Chairman of Judicial Council.

which we are here concerned, and which authorizes the rendition of a personal judgment upon substituted service against one who was a resident of this state at the time the cause of action arose "is used in reference to domicile, and hence means 'domiciliary.'" (*Smith* v. *Smith* (1955), 45 Cal.2d 235, 240 [288 P.2d 497].)

Supporting the trial court's finding that petitioner was such a resident, the following appears: In June 1955, petitioner, then admittedly a resident of Long Beach, California, was employed by the plaintiff for overseas duty at a salary of $15,600 per year and assigned to service with the Antilles Petroleum Company in Trinidad. Petitioner's transportation to Trinidad was provided by his employer and he remained in such employment at said place until July 1, 1957. During all of this time he maintained a savings account and checking account in a bank in the city of Long Beach and on the bank's records his residence is stated to be 5533 Hersholt Avenue in that city. Throughout this period, pursuant to petitioner's direction, his employer deposited all of his payroll checks in these bank accounts. As late as March 4, 1957, less than two months preceding the termination of his employment, petitioner rented a safe deposit box in the same bank giving the same address as his place of residence and which box he has continued to maintain since that time. On July 11, 1956, in answer to a communication from an officer of the plaintiff with respect to the matter of his vacation, petitioner stated that his wife, whom he had married in Trinidad on December 10, 1955, was expecting a child and that it did not seem feasible to take a vacation at that time. The letter then proceeds to state that "My two years in Trinidad will be completed in May of 1957. At that time I would like to return to the States for a vacation & then take on a new assignment or switch with one of the other men who are out at that time. I know it's quite a few months in advance, but I want you to know in plenty of time in the event something new comes up, there is someone available for a long term job. It doesn't have to be exactly in May, say any time after the 1st of the year. This is briefly all the plans we have made." Petitioner's employer had an established vacation policy or plan under which its employees stationed overseas received travel allowances permitting them to return to their permanent homes in the United States from the point of their employment after 18 months at the employer's expense. Petitioner exercised his rights under this plan by returning from Trinidad to the

United States in February of 1957 and drew $1,144 from his employer for travel expenses. Upon arriving in the United States he visited his employer's home office in Denver, Colorado, and then went to 5533 Hersholt Avenue, Long Beach, where he spent the balance of his time before returning to Trinidad. On July 11, 1956, petitioner made written application to his employer for group insurance on behalf of his wife and himself, wherein his address is stated as 5533 Hersholt Avenue, Long Beach. In the city directory of Long Beach issued during each of the years 1955, 1956 and 1957, petitioner is listed as residing at the same address last mentioned, and he admitted maintaining the same as his mailing address throughout this period. He also was the holder of an operator's license issued by the Motor Vehicle Department of the State of California in May, 1955, wherein his residence is stated to be at the address previously mentioned and he at no time thereafter filed with the department a notice of change of address.

In opposition to this showing, petitioner filed an affidavit wherein he states that at all times since June 7, 1955, he has resided in Trinidad and that "it was his intention at all times subsequent to July 1, 1955, to remain permanently or indefinitely in said Trinidad, or in some foreign country as a resident thereof," and that he has no intention of returning to the United States for the purpose of residing therein. He further states in his affidavit that the property at 5533 Hersholt Avenue is owned by his brother; that he has no interest therein and that it is occupied as a home by his mother; that he merely uses this address for convenience as a mailing address and that he has never claimed it as his residence. Affidavits to like effect with respect to the ownership and occupancy of the property at 5533 Hersholt Avenue were filed by petitioner's mother and brother. Attached to petitioner's affidavit there is a copy of a letter addressed to him by an officer of the plaintiff under date of August 29, 1956, which, in his affidavit he states "advises affiant that affiant qualified to apply for exemption under the provisions of Section 911 of the Income Tax law of the United States of America as a Non-Resident." A reference to this letter, however, and a copy of excerpts from the United States Treasury Regulations attached thereto, discloses that the exemption therein referred to relates to any citizen of the United States "present in a foreign country or countries during a total of at least 510 full days during any period of 18 consecutive months." This

exemption is not confined to bona fide residents of a foreign country or countries as petitioner's affidavit suggests.

■ Petitioner argues that residence (domicile) depends largely upon intention. This is undoubtedly true, but that intention is to be gathered from one's acts. (*Estate of Gordon* (1904), 142 Cal. 125, 129 [75 P. 672].) ■ Contrary to the assumption of petitioner, the statement that he at all times subsequent to July 1, 1955, intended to remain permanently in Trinidad or some foreign country, did not foreclose the trial court from considering his acts and declarations indicating a contrary intention. Certainly his letter of July 11, 1956, previously adverted to did not indicate that he intended to remain permanently in Trinidad but rather the contrary. Equally inconsistent with his presently expressed intention is the fact that all of his earnings during the period of his presence in Trinidad were deposited in bank accounts maintained by him in the city of Long Beach, and the further fact that as late as February, 1957, he rented a safe deposit box in the same bank for a period of a year and then gave the Long Beach address as his residence. Moreover, the statement in his affidavit "that it was his intention to remain permanently and indefinitely in said Trinidad *or in some foreign country*" is equivocal.

■ In 16 California Jurisprudence 2d, page 649, section 4, it is said: "To establish a domicile, two things are necessary: (1) the taking up of a physical or actual residence in a particular place, and (2) the intent to make it a permanent abode. Union of act and intent is essential; and until such union occurs one retains his former domicile. ■ One does not lose a former domicile by going to and stopping at another place for a limited time with no intention to reside there permanently, though the absence may continue for a number of years."

■ From the evidence before it the trial court was warranted in concluding that petitioner's presence in Trinidad was occasioned solely by reason of his employment, which place of employment was at all times subject to change by his employer. ■ In speaking of a similar situation, this court in *Rhodes* v. *Rhodes* (1947), 80 Cal.App.2d 723 [182 P.2d 275] said: (p. 725) "It has been uniformly held that a change of residence occasioned by the exercise of duties in connection with governmental civilian employment, irrespective of the length of time, does not bring about a change of domicile in the absence of clear proof of a concurrent intention to abandon

the old domicile and acquire a new one.'' And continuing at page 726: ''In section 244 of the Government Code is found codified the well-established rule of this and other jurisdictions that a residence can be changed only by the union of act and intent and that mere temporary absence from one's domicile for the purpose of engaging in employment, however long, will not effect a change of domicile where the intention is to be absent for that purpose alone and upon the termination of such employment to return to the former established domicile. (See *Estate of Peters,* 124 Cal.App. 75, 77 [12 P.2d 118]; 28 C.J.S., p. 32.)''

While the cited case involved a civilian employee of the government, the reasoning would seem equally applicable to one such as the petitioner whose employment necessarily takes him from place to place.

While the trial court could, on the evidence before it, have reached a different conclusion from that which it did, inasmuch as its finding is supported by substantial evidence we may not substitute our judgment for that of the trier of fact.

Finally, petitioner contends that the trial court could not properly find that petitioner was a resident of this state by reason of the fact that in the affidavit filed by the plaintiff for the order of publication of summons it is stated that the petitioner ''resides out of the State of California.'' However a similar contention was urged and rejected in *Smith* v. *Smith, supra,* 45 Cal.2d 235, 243. Moreover, in addition to the reasons therein assigned, the affidavit for publication of summons in the instant case is dated October 25, 1957, and discloses that it is based upon a statement made to the affiant by the petitioner on September 24, 1957. The question before the trial court here was not whether petitioner was residing out of the state of California on October 25, 1957, but whether he was such resident or domiciliary when the cause of action pleaded in plaintiff's complaint arose, namely: in June 1957.

The alternative writ is discharged and a peremptory writ of mandate is denied.

Shinn, P. J., and Wood (Parker), J., concurred.