[Civ. No. 21821. First Dist., Div. Two. Dec. 16, 1964.]

GEORGE WHITTELL, JR., et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Ernest P. Goodman and Harry W. Low, Deputy Attorneys General for Defendant and Appellant.

John V. Lewis, Richard H. Foster and B. V. Yturbide for Plaintiffs and Respondents.

TAYLOR, J.—The State Franchise Tax Board (hereafter referred to as Board) appeals from a judgment in an action for declaratory relief, in favor of the taxpayers, George and Elia Whittell, finding that plaintiffs were not "residents" of California for personal income tax purposes from 1940 to 1958. The case is one of first impression under sections 17014-17016 of the Revenue and Taxation Code, as well as section 1060.5 of the Code of Civil Procedure. The only question on appeal is whether the trial court properly determined that plaintiffs were in the State of California only for temporary and transitory purposes.

The matter was tried on the following stipulated facts: George Whittell was born in San Francisco in 1881 and married Elia in 1919. Until 1929, their only home was the old family home in Woodside built by Mr. Whittell's father in 1909 on 50 acres of land in San Mateo County. The cost of the land, the home and additional improvements exceeded $333,000. The Woodside home consisted of a large two-story residence, a six-car garage, servants' cottages, dairy buildings, a gatekeeper's lodge, a theater and a swimming pool.

The Woodside property was subsequently transferred to the Whittell Realty Company, of which George Whittell is the sole stockholder. From 1940-1958, the Whittells rented the Woodside property from Whittell Realty at a monthly rental of $750. The deductions for maintenance of the property for corporate income tax purposes exceeded the rental.

No one except the Whittells occupied the Woodside home which was constantly kept ready for their occupancy with a number of servants remaining whenever the Whittells were absent.

From before 1929 through 1958, Mrs. Whittell continuously maintained an apartment, which she used periodically, in San Francisco in buildings owned by the Whittell Realty Company.

From 1929 until 1936, Mr. Whittell rented various living quarters in Reno, Nevada. By 1936, he had purchased 50,000 acres or approximately one-sixth of the lake frontage of Lake Tahoe on the Nevada side of the lake at a cost of $2,700,000. In 1938, he improved this property at a cost of $300,000 by the construction of a main house, five guest and servants' houses, a stable, a lighthouse and two boathouses at Crystal Bay. No one except the Whittells occupied the Crystal Bay home which was likewise kept ready for their occupancy with a permanent housekeeper and servants. Insurance policies and records of the insurance company state the Woodside premises are "owner-occupied" and that the Crystal Bay premises are "partly owner-occupied."

The Woodside and Crystal Bay premises and the apartment in San Francisco were the only homes used by the Whittells. From 1941-1958 (except 1957), they spent eight to nine months of each year, from October until June or July, in California. Sometime in June or July, they would go to their home in Crystal Bay, Nevada. Mr. Whittell generally remained at Crystal Bay until sometime in October, when he returned to Woodside to remain until his departure for Crystal Bay in June or July of the following year. While he was in Crystal Bay, Mrs. Whittell often made trips to San Francisco and stayed at her apartment. It was customary, however, for her to return to Woodside with her husband in October. In 1956, Mr. Whittell broke his leg and remained in California the entire year of 1957.

Mr. Whittell inherited substantial estates from both of his parents, including the Whittell Realty, which was incorporated in California in 1909 and had its only office at 166 Geary Street in San Francisco. Besides the Woodside home, Whittell Realty owned and managed substantial commercial properties in San Francisco. The capital and surplus of the Whittell Realty rose by $1,320,123 from December 31, 1939, to December 31, 1958. As of December 31, 1958, its capital and surplus amounted to $3,939,987.89. Mr. Whittell is the

sole stockholder and president of Whittell Realty but has not entered the office for 30 years as he conducts all of his business by telephone. He received no income from the corporation during the time here relevant except a salary of $30,000 in 1957 and dividends of $75,000 in 1958.

Mr. Whittell's income is derived chiefly from dividends, interest, rental income, income from the sale of real property and the sale of Christmas trees. From 1940-1958, Mr. Whittell did not engage in any sales activities in connection with the Nevada lands and held no real estate or other licenses. In 1959, a portion of the Lake Tahoe property was sold for $5,000,000. At the time of trial [1963], the value of the property owned by the Whittells in Nevada was approximately $22,500,000.

The Whittells utilized California, Nevada and New York banks. Mr. Whittell's New York bank accounts were in the millions. His account at the First National Bank of Nevada has for some time been in excess of $1,000,000. Since 1936, he has had a savings account at the Anglo-California National Bank in San Francisco which had a balance of $982,477.50 in 1956 and an account at the Market-New Montgomery branch of the Bank of America in San Francisco with a balance of $50,000. Mrs. Whittell also maintained an account at this bank with a balance ranging from $1,000 to $19,000. Mrs. Whittell maintained a comparatively small account at the Redwood City branch of the Bank of America and wrote checks on it almost every month from 1940-1958. The Whittells maintained a safe deposit box at the Redwood City branch. The safe deposit box was used periodically by Mrs. Whittell. On those bank accounts as to which the Whittells disclosed an address, the Woodside address was used.

Since the early 1930's, the Whittells have filed their federal income tax returns in the Nevada Internal Revenue District. From 1940 to 1958, Mr. Whittell has made charitable gifts in both California and Nevada, political contributions only in Nevada, and has received a number of honorary appointments in Nevada. The Whittells maintained social relations in Nevada but consistently have relied on California lawyers, doctors, dentists and accountants. They own automobiles which are registered in both California and Nevada.

Mr. Whittell registered to vote in Nevada in 1930, 1934, 1940, 1948 and 1953. After the 1953 affidavit of registration was cancelled in 1954 for his failure to vote, he submitted another affidavit of registration in 1956. He has voted by

absentee ballot in Nevada in each of the years in question with the exception of 1954 when he failed to vote. Mrs. Whittell is not registered to vote.

The Whittells did not file California personal income tax returns for 1940-1956 or for 1958. In 1957, they filed a non-resident return reporting the $30,000 salary from Whittell Realty. In 1959, appellant Board issued its proposal for deficiency in California income taxes for 1940-1958 on the grounds that the Whittells were residents of California. The Whittells protested. In 1960, the Board determined that they were residents of California from 1940-1958. On appeal in 1962, the State Board of Equalization sustained the action of the Board and the Whittells commenced this action for declaratory relief pursuant to section 1060.5 of the Code of Civil Procedure. After a trial on the stipulated facts summarized above, the trial court concluded, as a matter of law, that the Whittells were in California only for temporary and transitory purposes and were residents of the State of Nevada not subject to the California Personal Income Tax Law.

█ Since the issue here involves the applicability of a statute to stipulated and uncontradicted facts, we are confronted purely with a question of law and are not bound by the findings of the trial court (*Peterson Tractor Co.* v. *State Board of Equalization,* 199 Cal.App.2d 662, 668 [18 Cal.Rptr. 800]). The statutes interpreted by the trial court are sections 17014, 17015 and 17016 of the Revenue and Taxation Code[1] which, in fixing state income tax liability, declare, inter alia, that every individual who is in this state for other than a temporary or transitory purpose is a resident. We must first decide whether, under these provisions, "residence" should be equated with "domicile" based on a single-residence

[1]Section 17014: " 'Resident' includes:
"(a) Every individual who is in this State for other than a temporary or transitory purpose.
"(b) Every individual domiciled in this State who is outside the State for a temporary or transitory purpose.
"Any individual who is a resident of this State continues to be a resident even though temporarily absent from the State."
Section 17015: " 'Nonresident' means every individual other than a resident."
Section 17016: "Every individual who spends in the aggregate more than nine months of the taxable year within this State shall be presumed to be a resident. The presumption may be overcome by satisfactory evidence that the individual is in the State for a temporary or transitory purpose."

premise, as apparently concluded by the trial court,[2] or whether it has reference to any factual place of abode of some permanency, as appellant Board contends.

It is true that "domicile" and "residence" are usually in the same physical location. Furthermore, "residence" is frequently construed to mean domicile and the terms are often used synonymously (Gov. Code, §§ 243, 244; Prob. Code, § 301; Civ. Code, § 128; Code Civ. Proc., § 417; Code Civ. Proc., § 395).

However, "domicile" properly denotes the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning but which the law may also assign to him constructively. Residence, on the other hand, denotes any factual place of abode of some permanency, that is, more than a mere temporary sojourn (*Smith* v. *Smith,* 45 Cal.2d 235, 239-240 [288 P.2d 497]). While a person can have in law only one domicile (*Smith* v. *Smith, supra,* p. 239), he may have several "residences" for different purposes (*Burt* v. *Scarborough,* 56 Cal.2d 817, 822 [17 Cal.Rptr. 146, 366 P.2d 498]) as well as more than one "residence" for tax purposes (*Texas* v. *Florida,* 306 U.S. 398 [59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179]).

The fact that residence is not a synonym for domicile and that its meaning in particular statutes is subject to differing construction has long been established (*Hanson* v. *Graham,* 82 Cal. 631, 633 [23 P. 56, 7 L.R.A. 127]). It is now well settled that "residence" is a term of varying import and its statutory meaning depends on the context and the purpose of the statute in which it is used (*Myers* v. *Carter,* 178 Cal. App.2d 622, 625 [3 Cal.Rptr. 205]; *Smith* v. *Smith, supra,* pp. 239-240). The legislative intent which must be given effect here is that of establishing a fair and practicable basis for income taxation. A brief look at the history of the Revenue and Taxation Code provisions involved is, therefore, relevant.

The original definition of "resident" adopted in 1935 when the Personal Income Tax Law was adopted provided: "The word 'resident' includes every natural person domiciled in the State of California and every other natural person who maintains a permanent place of abode within this State or

---

[2]The reporter's transcript indicates that the trial court seemed to be of the opinion that "residence" was a matter of intent and that there could be only one "residence" for all purposes. There are also findings concerning intent and the conclusion that respondents were domiciled in Nevada and not in California.

spends in the aggregate more than six months of the taxable year within this State. The word 'nonresident' includes every natural person other than a resident.'' (Stats. 1935, ch. 329, § 2(k), p. 1091.)

This definition embodying the concept of domicile as one definition of residence for tax purposes and the conclusive six-month presumption created many problems. (See Traynor & Keesling, *The Scope and Nature of the California Income Tax,* 24 Cal.L.Rev. 493; Keesling, *The Problem of Residence in State Taxation of Income,* 29 Cal.L.Rev. 706, 719.) Thus, in 1937, the Personal Income Tax Law was amended to read, in substantially its present form, that every person who was in California for other than a temporary or transitory purpose was a resident (Stats. 1937, ch. 668, § 1, p. 1831.) This definition, with minor changes not relevant here, is now found in sections 17014 to 17016 of the Revenue and Taxation Code previously noted. The purpose of the 1937 amendment was to insure that all those who are in California for other than a temporary or transitory purpose enjoying the benefits and protection of the state, should in return contribute to the support of the state (Traynor & Keesling, *supra,* 24 Cal.L.Rev. 493). Under this definition, a person may be a resident for income tax purposes although domiciled elsewhere and vice versa. Double taxation is avoided by a provision allowing a credit for taxes paid to another state on income subject to the California tax (Rev. & Tax. Code, § 18001).

In addition, since 1937 the Board has applied regulations[3] specifically referring to voluntary, physical presence in the state as a factor of greater significance than the mental intent or outward formalities of ties to another state.

---

[3]Reg. 17013—17015(a): ''The term 'resident,' as defined in the law, includes (1) every individual who is in the State for other than a temporary or transitory purpose, and (2) every individual who is domiciled in the State unless he is a resident within the meaning of (1) above of some other state or country. All other individuals are nonresidents.

''Under this definition, an individual may be a resident although not domiciled in this State, and, conversely, may be domiciled in this State without being a resident. The purpose of this definition is to include in the category of individuals who are taxable upon their entire net income, regardless of whether derived from sources within or without the State, all individuals who are physically present in this State enjoying the benefit and protection of its laws and government, except individuals who are here temporarily, and to exclude from this category all individuals who, although domiciled in this State, are physically present in some other state or country for other than temporary or transitory purposes, and, hence, do not obtain the benefits accorded by the laws and Government of this State.

''If an individual acquires the status of a resident by virtue of being

■ The contemporaneous administrative construction of a statute by the agency charged with its enforcement is entitled to great weight and the courts will not depart from such construction unless it is clearly erroneous or unauthorized (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 647 [335 P.2d 672]).

■ Subsequent to the adoption of these administrative regulations in 1937, the Legislature reenacted the present definition of resident without express or implied modification.[4] Thus, it may be presumed that the Legislature approved the regulations as being in accord with its intent that for tax purposes, residence means bodily presence as a nontransient inhabitant rather than domicile, which requires both physical presence in a particular locality and an intent to make it the individual's one permanent abode. A similar "nontransient test" is used in the application of the Internal Revenue Code of the United States (*Bowring* v. *Bowers,* 24 F.2d 918, 923; *Commissioner of Internal Revenue* v. *Swent,* 155 F.2d 513, 515; *Stallforth* v. *Helvering,* 77 F.2d 548, 549 [64 App. D.C. 290]) and by many other jurisdictions.[5]

We conclude that the trial court erred in misconstruing the word "resident" in Revenue and Taxation Code sections 17014-17016, to possess attributes which belong only to "domiciliary." We now apply the intended meaning of the word to the facts of the instant case.

---

physically present in the State for other than temporary or transitory purposes, he remains a resident even though temporarily absent from the State. . . ."

Reg. 17013—17015(b): "Whether or not the purpose for which an individual is in this State will be considered temporary or transitory in character will depend to a large extent upon the facts and circumstances of each particular case. . . ."

"If, however, an individual is in this State . . . for business purposes which will require a long or indefinite period to accomplish, . . . or has retired from business and moved to California with no definite intention of leaving shortly thereafter, he is in the State for other than temporary or transitory purposes, and, accordingly, is a resident taxable upon his entire net income even though he may retain his domicile in some other state or country." (Cal. Adm. Code, tit. 18, Part I, Regulations.)

[4](Stats. 1941, ch. 1226, § 1, p. 3042, ch. 1275, § 1, p. 3220; Stats. 1943, ch. 659, § 1, p. 2355; Stats. 1951, ch. 191, § 1, p. 440, ch. 216, p. 465; Stats. 1955, ch. 939, § 2, p. 1656.)

[5]For example, see *Matter of Newcomb's Estate,* 192 N.Y. 238, 250 [84 N.E. 950, 954]; Oregon Revised Statutes section 316.010; Arizona Revised Statutes section 43-101; Hawaii Revised Laws section 121-1; Georgia Code section 92-3002(i)(2); and North Carolina General Statutes section 105-132, all adopting the "temporary" or transitory test of determining residence for income tax purposes, and see *The Attorney General* v. *Coote,* 146 Eng. Rep. 433.

██ Until 1929, the respondents' only home was the Woodside residence acquired by Mr. Whittell's father in 1909. The cost of the land and improvements exceeded $333,000. During the years here involved, i.e., 1940-1958, the Whittells were physically present in the Woodside home from eight to nine months of each year. ██ Under section 17016 of the Revenue and Taxation Code, the single fact of spending nine months a year in this state invokes a rebuttable presumption of "residence." ██ Here we have a multitude of facts which, taken together, overwhelmingly establish that respondents did not use the elaborately furnished Woodside home for mere temporary sojourns. In fact, the alternative residence, the less expensively furnished Crystal Bay home, was occupied only during the summer vacation months.

Throughout his life, Mr. Whittell's family and business connections were in California. The fact that he did not enter the offices of the Whittell Corporation over a period of many years but conducted his business as president and sole owner by telephone did not eliminate his interest in this substantial corporation whose main purpose was the management of its extensive and valuable properties in San Francisco.

The fact that the Woodside home was rented at the very low figure from the Whittell Corporation, of which Mr. Whittell was the sole stockholder and president, did not detract from his complete control of the Woodside property. The home was used only by respondents and the insurance policies indicated it was "owner-occupied." In addition, Mrs. Whittell at all times maintained an apartment in San Francisco which she used throughout the year, even when her husband remained at the Crystal Bay summer home.

All of respondents' professional connections with lawyers, dentists, doctors and accountants were in San Francisco during the years in question. The parties' bank accounts in California were substantial. The bank records named Woodside, California, as their "home residence." They registered cars in California and gave to California charities. The fact that the Whittells engaged in Nevada's social, philanthropic, economic and political life did not render their substantial activities in California any less indicative of their residence here.

A prior finding by the Franchise Tax Commissioner that respondents were not residents of California in 1935, 1937 and 1938, and the federal court's adjudication in 1936 that Mr. Whittell was a citizen of Nevada for purposes of diversity jurisdiction are not relevant to the determination of the Whit-

tell's residence for tax liability purposes during the years 1940-1958.

The fact that Mr. Whittell voted in Nevada was not controlling in fixing that state as his sole residence for taxation purposes. In rejecting voting as a test of domicile in *District of Columbia* v. *Murphy*, 314 U.S. 441, the United States Supreme Court said at pages 456 and 457 [62 S.Ct. 303, 86 L.Ed. 329] : ''Whether or not one votes where he claims domicile is highly relevant but by no means controlling. Each State prescribes for itself the qualifications of its voters, and each has its own machinery for determining compliance with such qualifications. A vote cast without challenge and adjudication may indicate only laxity of the state officials, and even an adjudication of the right to vote cannot preclude the levy of a tax by an arm of the Federal Government. . . .'' The instant case appears to be a perfect example of Mr. Justice Jackson's statement as Nevada requires of its electors six continuous months of presence (Nev. Rev. Stat., § 293.485) and according to the stipulation, respondents were in Nevada for only three or four months of each year. *Texas* v. *Florida*, 306 U.S. 398 [59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179], held that the deceased taxpayer was a domiciliary of Massachusetts for inheritance tax purposes although he had voted in Texas and had run for Governor of Texas.

Although it was necessary to consider the Whittells' connections with Nevada as they might reflect on the nature of the California residence, we reiterate that a domicile in Nevada is not irreconcilable with the existence of tax liability in this state under section 17014 et seq. of the Revenue and Taxation Code. We conclude that the Whittells' domestic and business activities in California are extensive indeed and make it abundantly clear that their presence here was neither temporary nor transitory. For the privilege of an elaborate residence, vast property holdings and extensive business activities, these respondents must bear their fair share of the state tax burden.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 15, 1965, and respondents' petition for a hearing by the Supreme Court was denied February 10, 1965. Mosk, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.