[Civ. No. 43645. Second Dist., Div. Four. Mar. 10, 1975.]

FRED C. KLEMP et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Evelle J. Younger, Attorney General, Philip C. Griffin and Mark W. Jordan, Deputy Attorneys General, for Defendant and Appellant.

Dillon, Boyd, Dougherty & Perrier and Willis E. Urick, Jr., for Plaintiffs and Respondents.

OPINION

**FILES, P. J.**—The principal question here is whether plaintiffs were residents of California for personal income tax purposes for the fiscal years ending June 30, 1960, through 1964, inclusive.

After the Franchise Tax Board (hereinafter "Board") had assessed against Mr. and Mrs. Klemp income taxes for the years in question, they appealed to the State Board of Equalization, which sustained the assessment. The Klemps then filed this action in the superior court. The case was tried upon a written stipulation of facts and the testimony of Mrs. Klemp, and judgment was entered in favor of the Klemps declaring that they were not residents of California for income tax purposes during any of the years in question. The Board appeals from that judgment.

There is no conflict in the evidentiary facts, which are a detailed recital of the activities, business interests and affiliations of the Klemps prior to and during the years in question. Mrs. Klemp's oral testimony supplemented the stipulation with further detail.

The Board did not and does not challenge the credibility of that testimony or suggest that there are conflicting inferences which might be drawn as to any material fact. We therefore accept the Board's view that this case involves the applicability of a statute to uncontradicted facts, which is purely a question of law, as was the issue in *Whittell* v. *Franchise Tax Board* (1964) 231 Cal.App.2d 278, 283 [41 Cal.Rptr. 673].

Both of the Klemps lived in Chicago, Illinois, prior to their marriage in 1937. During the succeeding years their principal business activity was designing, constructing, repairing, operating and leasing motor freight terminals. Seven such terminals and a garage were built in the Chicago area. Mrs. Klemp, an electrical engineer, was an active participant in business affairs. Their activities "centered around their wholly owned corporation, the Dale Oil Company," though they had a total of 25 Illinois corporations, all operating solely in Chicago. The terminals built by the Klemps were leased to others with an option to buy. A manager took care of certain matters, leaving the Klemps free to leave Chicago, returning when the business needed them.

Their places of residence in Illinois were in homes outside of Chicago part of the time, and in Chicago apartments. From 1950 until 1956 they maintained a Chicago apartment. After that they used an apartment in an apartment hotel, which they relinquished when out of the city. Mrs. Klemp testified "We would stipulate that we would be there at certain times and then it was our apartment, and the rest of the time it was rented elsewhere."

From the beginning of their marriage the Klemps travelled extensive-

ly. Their first year (1937-1938) they were out of Illinois 115 days. In no subsequent year were they away less than 90 days.

In 1955 the Klemps built a house in Rancho Mirage, near the City of Palm Springs, California.

The following schedule[1] shows where their time was spent during the period in question:

| *Calendar Year* | *Days in California* | *Days in Illinois* | *Days Elsewhere* |
|---|---|---|---|
| 1959 | 116 | 97 | 152 |
| 1960 | 164 | 98 | 103 |
| 1961 | 171 | 69 | 125 |
| 1962 | 186 | 21 | 158 |
| 1963 | 159 | 33 | 173 |
| 1964 | 171 | 25 | 169 |

During those years their usual pattern was to be in California from October to April, except for a Christmas holiday trip to Hawaii, and short trips to Chicago and elsewhere. In early summer they spent two to three months in Europe, followed by a visit to Hayden Lake, Idaho, and some travelling after that before the fall trip to California. They stayed in Chicago before and after the European trip, and whenever else their business required.

The Klemps sold their garage in January 1960. Dale Oil Compàny was liquidated in 1963 and its business was taken over by employees who borrowed from the Klemps to purchase it. The purchasers were unable to keep it, so the Klemps were required to take the business back and sell it to someone else after April 1965. The terminals were disposed of gradually, the last sale being in April 1965.

Following liquidation of their businesses the Klemps continued to receive income from mortgages on the terminals and loans to truck operators.

During the entire five-year period:

The Klemps were registered to vote in Illinois.

[1]Neither side makes any point of the fact that this schedule is based upon calendar years, although the tax assessment was based on fiscal years ending June 30.

Their motor vehicles were registered and their drivers' licenses issued in Illinois.

The Klemps maintained business offices in Chicago and conducted no business in California. Their accounting (including preparation of federal tax returns) and all of their legal work was done there. They had no California attorney until this tax controversy arose.

All of their banking was done in Chicago, except for a small household account maintained for convenience in California.

Business correspondence, including collections and deposit of income, was handled in Chicago.

Their investment counsellor, family doctor and family dentist were in Chicago. They belonged to a Chicago church and contributed to Illinois charities. Mr. Klemp owned a burial plot in Chicago. They had no investment counsellor or church affiliation in California, and no doctor or dentist except for emergencies.

Their insurance was all handled in Chicago except with respect to the California house.

They kept a safe deposit box in Chicago, and none in California. Their wills had been prepared in Chicago and kept there.

The Klemps were members of the Thunderbird Country Club, located near their California home, and Mrs. Klemp served as chairman of the Women's Golf Association at the club for a two-year term ending in February 1963. The duties of this chairmanship do not appear in the record.

Revenue and Taxation Code[2] section 17041 imposes a tax "upon the entire taxable income of every resident of this state . . . ."

Section 17014 provides: " 'Resident' includes:

"(a) Every individual who is in this State for other than a temporary or transitory purpose.

[2]All statutory citations hereafter are to the Revenue and Taxation Code.

"(b) Every individual domiciled in this State who is outside the State for a temporary or transitory purpose.

"Any individual who is a resident of this State continues to be a resident even though temporarily absent from the State."

Section 17016 provides: "Every individual who spends in the aggregate more than nine months of the taxable year within this State shall be presumed to be a resident. This presumption may be overcome by satisfactory evidence that the individual is in the State for a temporary or transitory purpose."

The Board does not contend that the Klemps are individuals "domiciled in this State" under subdivision (b) of section 17014. Inferentially, the Board concedes that the Klemps are domiciliaries of Illinois. The issue is whether they were, during the years in question, in California "for other than a temporary, or transitory purpose" within the meaning of subdivision (a) of the governing statute.[3]

The only appellate court decision which has considered the meaning of residency under this statute is *Whittell* v. *Franchise Tax Board, supra,* 231 Cal.App.2d 278. That opinion contains an analysis of the history and meaning of the statute which is of interest, but the decision is based upon facts quite different from the present case. In *Whittell* the question was whether Californians had given up their California residence when they moved their domicile to Nevada; in the present case it is whether persons from another state have acquired a residence in California.

The Board has, pursuant to section 19253, issued regulations interpreting the statutory definition of residence.[4]

These regulations include the following:

"Whether or not the purpose for which an individual is in this State

[3]This decision does not involve the constitutional power of the State of California to impose an income tax upon an individual who maintains a place of abode within the state. There is no indication in the statute or regulations that California has attempted to exercise its power to the full extent of its constitutional limits. (See Keesling, *The Problem of Residence in State Taxation of Income* (1941) 29 Cal.L.Rev. 706, 721.)

[4]The regulations cited by counsel and in this opinion are the current regulations as amended October 8, 1967, which was subsequent to the years involved in this appeal. But the statute has not changed and, hence, these regulations stand as the Board's interpretation of the pertinent statute and are entitled to "great weight" in this court. (See *Whittell, supra,* 231 Cal.App.2d at p. 286.)

will be considered temporary or transitory in character will depend to a large extent upon the facts and circumstances of each particular case. . . ."

"The underlying theory of Sections 17014-17016 is that the state with which a person has the closest connection during the taxable year is the state of his residence.

"An individual whose presence in California does not exceed an aggregate of six months within the taxable year and who is domiciled without the state and maintains a permanent abode at the place of his domicile, will be considered as being in this state for temporary or transitory purposes providing he does not engage in any activity or conduct within this State other than that of a seasonal visitor, tourist or guest.

"An individual may be a seasonal visitor, tourist or guest even though he owns or maintains an abode in California or has a bank account here for the purpose of paying personal expenses or joins local social clubs." (Cal. Admin. Code, tit. 18, reg. 17014-17016(b).)

The argument of the Board in this case emphasizes a comparison between the amount of time the Klemps spent in California and time they spent in Illinois during the years in question. This must necessarily be the basis of the Board's position, since virtually every other aspect of the Klemps' existence, as shown by the record, connects them with Illinois. We must evaluate the fact that in 1962 the Klemps spent 186 days (*i.e.,* about three days more than six months) in California and only 21 days in Illinois. The disparity in other years was substantial, though less dramatic than in 1962.

The language of the statute establishes that the length of time a person is in California does not necessarily compel a determination that he has acquired residence here. Section 17016 concedes that evidence may show that presence for more than nine months is "for a temporary or transitory purpose," and, hence, does not constitute residence for income tax purposes. The regulations recognize that a person who stays as long as six months may be considered as being in the state for temporary or transitory purposes "providing he does not engage in any activity or conduct within this state other than that of a seasonal visitor, tourist or guest." The record unequivocally shows that the Klemps did not, during the period in question, engage in any activity in California other than that of a seasonal visitor or tourist. The regulation further establishes that

the ownership of an abode, a bank account and a club membership do not subject a seasonal visitor to California income tax. Since time spent in California is only a factor to be considered as an indication of the purpose of the visit, a stay of three days beyond the six months administrative guideline should not tip the scale when all other circumstances remain the same.

The Board points out that the Klemps did not, during the years in question, maintain in Illinois a "place of abode"—that is, they did not own or rent premises in Illinois which remained vacant during their absence. This lack of an abode in Illinois was simply a function of economy and convenience in a lifestyle which included not only winters in California, but other seasons habitually spent as visitors and tourists in other vacation spots. The lack of an empty house or apartment in Illinois is a factor to be considered in determining whether a family is in California as seasonal visitors or otherwise, but under the statute the decision must turn ultimately upon what they were doing in California. What was unique about the Klemps was that over the years they had so arranged their lives that they were able to travel about as tourists an unusual proportion of the time, yet preserve in Illinois the relationships and interests built up over a lifetime, including management of substantial business enterprises. It is true, as the Board points out, that as time passed, the Klemps' business activity in Illinois diminished. This was a result of the change in the nature of their holdings, and did not reflect any transfer of anything from Illinois to California. The Klemps' only connection with California, as shown by the record, was their purpose to spend the colder half of the year as visitors in the California desert, together with their ownership of a house and a club affiliation suitable for that purpose. By the standards established in the statute and the regulations, they did not become California residents, within the meaning of section 17014, during the years in question.

The judgment is affirmed.

Jefferson, J., and Dunn, J., concurred.