[No. B167881. Second Dist., Div. Five. May 11, 2004.]

HOMER E. NOBLE et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

**COUNSEL**

Richard W. Craigo for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, W. Dean Freeman and Anthony Sgherzi, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

Plaintiffs and appellants Homer E. Noble (Homer)[1] and Stephanie F. Noble (Stephanie), his spouse, filed an action against defendant and respondent Franchise Tax Board (FTB) seeking a declaration that appellants were not residents of California for tax purposes as of and after March 1, 1994, and particularly March 7 and March 25, 1994. Those were dates on which certain securities were sold resulting in capital gains. Thus, appellants claimed they should not be taxed on these transactions as if they had been residents of California. The FTB counters that appellants were residents of California until after March of 1994 and thus were taxable on all income from all sources during that period of residency. We affirm the judgment of the trial court and hold that notwithstanding appellants' intention to move to Colorado in the future, the physical facts demonstrate that they had not relinquished their California residency as of March 1994 and were therefore subject to the California tax on the securities transactions that occurred during that month.

## BACKGROUND

The parties stipulated to certain facts and added additional facts by way of testimony and exhibits. On March 7, 1994 and March 25, 1994, Homer sold securities resulting in a net capital gain, and the transactions were reported on a 1994 Form 540NR ("California Nonresident or Part Year Resident Income Tax Return") as not being subject to the California income tax because of a change of residency on March 1, 1994. The appellants contended that all the securities sold were the sole and separate property of Homer due to a 1976 antenuptial agreement that the appellants could not produce.

The appellants lived in Colorado until 1988 when they both became California residents and domiciliaries. Homer continued to own property and obtain property in Colorado, and appellants used Colorado attorneys, accountants, and securities brokers and maintained bank accounts in Colorado. During 1993, they filed California income tax returns that reflected their California residency.

---

[1] The first names are used because they were used in the stipulation of uncontested facts.

In 1992, appellants considered permanently returning to Colorado and began looking for residential property there. In 1993, Homer contracted to purchase a 130.92-acre parcel in Colorado that included a residence, and the escrow closed on February 25, 1994. The parties stipulated that during 1993 it was the "intention of the Nobles[:] (a) to change their domicile and residence and that of their minor son David from California to Colorado, (b) to complete the move to Colorado as soon as possible after the closing of escrow" on the Colorado property. Sometime after a visit to that property in April 1994, however, appellants decided not to reside there. That Colorado property or a portion of it had been reported as a rental property for purposes of depreciation beginning on February 26, 1994.[2] On May 14, 1994, Stephanie contracted to buy a house in Colorado, and escrow closed on June 1994. Appellants ultimately inhabited that residence. On July 15, 1994, they moved part of their household goods to Colorado and the remainder on November 30, 1994. They began paying maintenance and utility expenses for this Colorado residence in July 1994.

In January 1994, appellants had removed their son from a California school, with Stephanie providing home schooling at appellants' principal residence in California. In late February 1994, appellants began to have brokers show their California residence for the purpose of selling it. They listed it for sale on June 6, 1994 and sold it on November 24, 1994. They continued to pay maintenance and utility expenses on this California residence through November 1994. Appellants assert Homer was in Colorado for a substantial period in January 1994. In February, Homer was in Colorado for nine days.

According to the stipulation between the parties, the following occurred or existed after March 1, 1994:

"12. (a) The Rancho Santa Fe property [in California] remained the property of the Nobles and was used by them as a residence along with their furniture and furnishings. . . .

"(b) Homer maintained a lease on a California business office in Encinitas, California through July 15, 1994. The Nobles contend that the reason was to maintain the office until his secretary could find other employment.

---

[2] A personal residence cannot be depreciated.

"(c) Homer held a membership allowing him and Stephanie access to the Turf Club at Del Mar Race Track, Del Mar, California, during the annual race meet, which operated there during July–September 1994.

"(d) The Nobles maintained a safe deposit box at Rancho Santa Fe Bank in Rancho Santa Fe, California, the last renewal occurring July 8, 1993.

"(e) Annual California automobile registrations were maintained by the Nobles on three automobiles in California.

"(f) California drivers' licenses were maintained by the Nobles.

"(g) The Nobles maintained their primary personal checking account in California at Rancho Santa Fe Bank . . . . The statements were sent to the Rancho Santa Fe property address.

"(h) The Nobles maintained a post office box in Rancho Santa Fe, California.

"(i) Two credit cards were used with invoices being sent to the Nobles' California addresses. The number of California payees exceeded the number of Colorado payees.

"(j) Four personal and business checking accounts were maintained in California, with bank statements being sent to the Nobles' California addresses. Checks written on such accounts substantially exceeded checks written on the pre-existing Colorado checking accounts, and substantially more checks were made to California payees than to Colorado payees.

"(k) The mailing address for statements from the pre-existing Colorado brokerage account was Homer's California business address.

"(l) Cellular phones were used by the Nobles with invoices being sent to the Nobles' California addresses.

"(m) The Nobles paid for medical and dental care rendered in California, with checks totaling $1,441 issued by the Nobles relative thereto, after March 1, 1994, representing 10 visits to California physicians. Colorado medical expenses weren't incurred until August 1994.

"(n) The Nobles were not in Colorado during March 1994, but were in Colorado extensively during April 1994."

Homer testified he maintained his major personal bank account in the Scripps Bank in La Jolla and an office in Encinitas until after March of 1994. In addition, Homer wrote a check on July 15, 1994, for the rental of a moving truck and noted on it, "Moving to Denver." Appellants opened a checking account in Colorado in August 1994, obtained Colorado drivers' licenses in September to October 1994, and registered to vote in Colorado in September to October 1994. On their 1994 tax returns, appellants depreciated the value of horses they had in California.

The parties agreed that appellants' business and personal contacts were "substantially greater" in California than in Colorado through July 15, 1994. "By the end of 1994, the Nobles' move to Colorado had been completed, with virtually all of the foregoing contacts with California severed, and they have not returned to California as residents."

Appellants filed a 1994 Colorado income tax return "indicating that the 'Taxpayer' was a 'Part-time resident' [of Colorado] from April 15, 1994 to December 31, 1994 and that the 'Spouse' was a resident of Colorado from March 1, 1994 to December 31, 1994. . . . On the first page of such return, Homer is designated as 'Yourself' and Stephanie is designated as 'Spouse.' [¶] [Appellants] also filed a Federal income tax return for 1994, as well as a non-resident returns with the states of Arizona, Kentucky, Louisiana, New Mexico, New York, North Dakota, and Oklahoma. Each of these returns listed the Nobles' address [in Colorado]. The Oklahoma return, which reported no tax due, indicated under 'Residency status' that the Nobles' were nonresidents and that their 'State of Residence' was California."

The FTB, after an audit, concluded that the appellants were California residents until July 15, 1994. The FTB's position was that appellants' contacts with California before March 1, 1994 "continued to substantially exist with California at and subsequent" to the time they contend they became residents of Colorado, and that they had not physically moved from their residence in California to Colorado as of March 1, 1994.

Thus, the FTB concluded "that Mr. and Mrs. Noble were domiciled in California, absent for temporary or transitory purposes, and therefore residents of California through July 15, 1994. As such, they are taxable on all income from all sources earned during the period January 1, 1994 through July 15, 1994, as determined by California statutes. [¶] Mr. and Mrs. Noble became domiciled in and residents of Colorado on July 16, 1994. Their absences from Colorado after July 15, 1994 were for temporary or transitory purposes. As such, only income from California sources earned after July 15, 1994 would be taxed by California as determined by California statutes."

The State Board of Equalization sustained the position of the FTB. Appellants filed their declaratory relief action. They sought a declaration that for California resident tax purposes they were solely Colorado residents from March 1, 1994 to December 31, 1994; alternatively, that Homer was solely a Colorado resident for that period; alternatively, that Homer or both appellants were solely Colorado residents from March 7, 1994 through December 31, 1994; or alternatively, that Homer or both appellants were solely Colorado residents from May 25, 1994 through December 31, 1994. The matter was tried by the trial court without a jury on the basis of the stipulation, further testimony, and exhibits. The trial court ruled in favor of the FTB. Appellants appealed.

## DISCUSSION

### A. Applicable Provisions

■ The California income tax is imposed on the entire taxable income of residents of the state. (Rev. & Tax. Code, § 17041.)[3] At the time in question, California taxed the income of part-year residents derived from sources within the state, and taxed their income from whatever sources derived during the period of residence in the state.[4] (Former § 17041, amended by Stats. 2001, ch. 920, § 2.5, eff. Oct. 14, 2001; former § 17303, repealed by Stats. 2001, ch. 920, § 10, eff. Oct. 14, 2001.)[5] Under section 17014, subdivision (a), a "Resident" includes: "(1) Every individual who is in this state for other than a temporary or transitory purpose. [¶] (2) Every individual domiciled in this state who is outside the state for a temporary or transitory purpose."

"Under this definition, a person may be a resident for income tax purposes although domiciled elsewhere and vice versa. Double taxation is avoided by a provision allowing a credit for taxes paid to another state on income subject to the California tax (Rev. & Tax. Code, § 18001)." (*Whittell v. Franchise Tax Board* (1964) 231 Cal.App.2d 278, 285 [41 Cal.Rptr. 673] (*Whittell*); see also 9 Witkin, Summary of Cal. Law (9th ed. 1989) Taxation, § 285, pp. 342–343.)

---

[3] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

[4] "The capital gain income from the sale of the stock is taxable by California because you were a California resident when you sold the stock." (Cal. Franchise Tax Board, Personal Income Tax—Change of Residency From California (Move-Out) (2001) Cal. Tax Reports (CCH) ¶ 15-119, p. 2076.)

[5] The taxable income of part-year residents is now calculated in a different manner. (See § 17041, subds. (b), (i).)

## B. Standard of Proof

Although the FTB suggests there are conflicting facts, it has not identified any. The stipulation covers most of the facts, and the other facts submitted by appellants are uncontradicted.

" 'The question of residence or domicile is a mixed question of law and fact, and the determination of the trial court, upon conflicting evidence, is conclusive upon this court. . . .' " (*Estate of Phillips* (1969) 269 Cal.App.2d 656, 659–660 [75 Cal.Rptr. 301].) But when as in this case, "the issue . . . involves the applicability of a statute to stipulated and uncontradicted facts, we are confronted purely with a question of law and are not bound by the findings of the trial court." (*Whittell, supra,* 231 Cal.App.2d at p. 283; see also *Klemp v. Franchise Tax Bd.* (1975) 45 Cal.App.3d 870, 872 [119 Cal.Rptr. 821].)

To what extent, if any, the court gives deference to the conclusions of the FTB and Board of Equalization depends upon a number of factors. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 349–354 [86 Cal.Rptr.2d 362].) As we come to the same conclusion in this case as the FTB, we need not attempt to analyze the quantum of deference, if any, accorded to the decisions of the FTB and Board of Equalization.

## C. Appellants Were Residents of California

Appellants' position appears to be that by March 1, 1994, they intended to move to Colorado and the "transition" of their move to Colorado had "progressed far enough" by March 1, 1994 so that their California residency had ended, and their presence in California had become for a " 'temporary or transitory' purpose." Thus, they argue, as "nonresidents" (§ 17015 [" 'Non-resident' means every individual other than a resident"]), they can only be taxed on income from sources within California (§ 17951) and not on the sale of securities in March of 1994.

Appellants do not contend that they actually moved to Colorado by March of 1994. A resident's intent to move unsupported by physical acts is not the determinative factor as to whether a taxpayer has changed his or her residence or domicile for tax purposes. Physical presence in the state has been "a factor of greater significance than the mental intent or outward formalities of ties to another state." (*Whittell, supra,* 231 Cal.App.2d at p. 285.) To the extent residence and domicile depend upon intent, "that intention is to be gathered from one's acts." (*Chapman v. Superior Court*

(1958) 162 Cal.App.2d 421, 426 [328 P.2d 23]; see Hellerstein & Hellerstein, State Taxation (3d ed. 2003) Personal Income Taxes, ¶ 20.03, p. 20-15 ["The cases addressing the question of whether a taxpayer is domiciled in the state are legion, and they generally focus on the objective indicia of the taxpayer's subjective intention to make a particular state his or her home"].)

Courts have defined residency and domicile under statutes other than the California income tax statute. Such definitions are relevant because " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness." ' " (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253 [135 Cal.Rptr.2d 639, 70 P.3d 1054].) Under the Government Code, a change in residence or domicile requires a "union of act and intent" (Gov. Code, § 244, subd. (f); *Chambers v. Hathaway* (1921) 187 Cal. 104 [200 P. 931] [under former Pol. Code, § 52, subd. 7]), and in that connection, when " 'a person *actually removes to another place* with an intention of remaining there for an indefinite time, and as a place of present domicile, it becomes his place of residence or domicile . . . .' " (*Estate of Weed* (1898) 120 Cal. 634, 639 [53 P. 30] [under former Pol. Code, § 52], italics added.) "A domicile once acquired is presumed to continue until it is shown to have been changed, and to constitute the new domicile two things are indispensable: First, residence in the new locality; and second, the intention to remain there. [Citations.]" (*Murphy v. Travelers Ins. Co.* (1949) 92 Cal.App.2d 582, 587 [207 P.2d 595].) Referring to the Government Code, one court stated, "Thus our courts have held that two elements are indispensable to accomplishing a change of domicile: *actual* residence in the new locality plus the intent to remain there." (*DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268 [6 Cal.Rptr.2d 267], italics added.)

█ If one is a resident of the state, that person cannot be in the state for "a temporary or transitory purpose" until that person's acts as well as his or her intent show that he or she has moved out of the state. That one may intend to move from California at some time in the future does not make that person someone who is in California for a temporary or transitory purpose. If it did, every person who contemplates plans for a future move would not be taxable as a resident. One is a resident for tax purposes until there are sufficient indicia of an actual change of such residence.

The purpose of the definition of "resident" under section 17014 "is to include in the category of individuals who are taxable upon their entire net income, regardless of whether derived from sources within or without the State, all individuals who are physically present in this State enjoying the benefit and protection of its laws and government, except individuals who are here temporarily . . . ." (Cal. Code Regs., tit. 18, § 17014; see *Whittell, supra,*

231 Cal.App.2d at p. 285 [purpose of section 17014 is "to insure that all those who are in California for other than a temporary or transitory purpose enjoying the benefits and protections of the state, should in return contribute to the support of the state"]; *Peringer v. Franchise Tax Board* (1980) 105 Cal.App.3d 514, 517–518 [164 Cal.Rptr. 465] ["he has continued for now some 23 years to live and work in this state, enjoying its benefits and protection and must respond in tax terms accordingly"].)

The uncontradicted facts establish that no matter what their intention for the future, as of March 1994, appellants had not relinquished either their residence in California, as defined by section 17014, or California domicile, which can be an element of residence under section 17014. (§ 17014, subd. (a)(2).) They may have intended to move to Colorado, but they continued to reside in California until after March 1994—i.e., until they moved to Colorado and had "actual residence" there. (*DeMiglio v. Mashore, supra,* 4 Cal.App.4th at p. 1268.) That they considered themselves in "transition" has no legal significance.

Appellants were not in California for a "temporary or transitory purpose" because they had not yet relocated to Colorado, even though they may have intended to do so. During March of 1994, they continued to reside in their California home, which home they did not list for sale until June 1994; they continued the registration of their vehicles in California; they continued their California drivers' licenses; Homer continued his membership in a California club; Homer continued to lease a business office in California; invoices for their cellular phones and credit cards were sent to them in California; they maintained a post office box in California; they maintained their primary personal checking account and other checking accounts in California, and the statements were sent to their California residence; California payees of their checks exceeded Colorado payees of their checks; they maintained a safe deposit box in California; the mailing address of Homer's brokerage account was Homer's California business address; they paid significant amounts for medical and dental care rendered in California; and they spent no time in Colorado during March of 1994.

These overwhelming facts of California contacts demonstrate that appellants were, during March of 1994, "physically present in this State enjoying the benefit and protection of its laws and government . . . ." (Cal. Code Regs., tit. 18, § 17014.) There were not sufficient indicia that appellants' residence in California for purposes of the income tax had ended. Thus, appellants were residents of California during March of 1994 under section 17014 and therefore subject to taxation on their taxable income derived from the sale of securities on March 7, 1994 and March 25, 1994.

## DISPOSITION

The judgment of the trial court is affirmed. Respondent is entitled to its costs.

Turner, P. J., and Armstrong, J., concurred.