DANEEN L. YOUNG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent JOHN C. SIDDALL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Young v. Commissioner
Docket Nos. 3117-72, 3217-72.
United States Tax Court
T.C. Memo 1974-99; 1974 Tax Ct. Memo LEXIS 221; 33 T.C.M. (CCH) 488; T.C.M. (RIA) 74099; April 22, 1974, Filed *221 H traveled to India to work on a television production show and became a bona fide resident of that country in late 1966 or early 1967. W joined H in India in July 1967. H and W took enough clothing and personal effects with them for an indefinite period, retaining a condominium and car in California. On a business trip, H and W returned to the United States in September 1967. While in the United States the televison show was cancelled and H lost his job with the production company. H remained in the United States until July 1968, when he went to Japan to work. Held, H was not a bona fide resident of a foreign country or countries for an uninterrupted period of a year for purposes of applying the exclusion of foreign source income under section 911(a), I.R.C., 1954. Held further, H and W were domiciled in the State of California during the entire taxable year 1967. Richard F. Hamlin, for petitioner in docket No. 3117-72. David R. Shaub, for petitioner in docket No. 3217-72. Richard H. Gannon, for the respondent. WILES V MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' income taxes for the taxable year 1967 in amounts as follows: Petitioner
Amount Daneen L. Young
$1,212.50
John C. Siddall
$1,223.75
The issues for decision are: (1) whether John C. Siddall was a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year for purposes of excluding, under section 911(a) (1), [1] amounts received from sources without the United States which constitute earned income attributable to services performed during such period; and (2), *223 alternatively, whether John C. Siddall and Daneen L. Young were domiciled in California during 1967. FINDINGS OF FACT The petitioners are Daneen L. Young (hereinafter referred to as Young) and John C. Siddall (hereinafter referred to as Siddall), who were husband and wife during 1967. Young and Siddall obtained a divorce subsequent to 1967 and the former has remarried. At the time Young filed her petition in this case, she was a legal resident of Epping, New Hempshire. She filed a 1967 tax return under the status of "Married filing separately" with the district director of internal revenue in Los Angeles, California. At the time Siddall filed his petition in this case, he was a legal resident of Los Angeles, California.He filed a 1967 tax return under the status "Married filing separately" with the district director of internal revenue in Los Angeles, California. Siddall graduated from the University of Southern California in 1952, having majored in accounting. From June 1952 to April 1958, he was employed by Arthur J. *224 Dellinger and Associates, Certified Public Accountants, with its principal offices located in Santa Monica, California, and branch offices located in San Rafael, California; Oakland, California; Okinawa and Guam. During this period of employment, Siddall became interested in the possibility of working in the Far East, and on August 30, 1957, went on a business trip on behalf of Arthur J. Dellinger and Associates, to Okinawa, continued on to Guam on September 14, 1957, and returned through Hawaii on September 17, 1957. In April 1958, Siddall commenced working for Bundy Manufacturing, located in Santa Monica, as controller, and continued in that position until September 1958. In September 1958, as a result of his own efforts, Siddall was contacted and hired by State Construction Company with its principal offices located in Okinawa. Siddall proceeded to Okinawa through the Philippines and worked for State Construction Company through February 15, 1963. During this period of time, Siddall's employment required him to travel to Guam and Tokyo, Japan. For the tax years 1958 through 1962, inclusive, Siddall filed his tax returns as a foreign resident abroad, reporting income as earned *225 abroad and exempt from income taxation within the United States. [2]
For the tax years 1963 through 1966, inclusive, Siddall, having left his construction company position in Okinawa looked for other employment with an overseas company. In the meantime, however, he became a Cost Accountant at M.G.M. Studios in April 1963, and by October 1966 was the Chief Accountant for the studio. All of Siddall's income tax returns for the years 1963 through 1966, inclusive, reported all income earned in the United States, and were filed on the basis that he was a resident of the United States. During the period of April 1963 through October 1966, Siddall continuously sought to obtain employment with an overseas corporation in order to again move his residency outside the United States to the Far East. In October 1966, Siddall was approached by King Brothers Productions (hereinafter referred to as King Brothers) who were aware that he was interested in working overseas and establishing a foreign residency. At that time King Brothers did all *226 of its filming outside the United States. Siddall was requested to work for the company in India for an indefinite period of time with regard to accounting services for the television production series known as "Maya." It was expected that the employment would last approximately two years. He was hired as Director of Finance for King Brothers and obtained a visa to travel to India on December 20, 1966. On approximately December 26, 1966, Siddall departed for Bombay via New York City and London. By reason of certain business that had to be conducted on the way to Bombay, India, and by reason of certain necessary flight connections, Siddall proceeded via New York City, London, Paris, Munich, Rome and then flew to Bombay, India, and was admitted there on January 4, 1967. Young initially was to have joined Siddall in India approximately one month after his departure. She developed medical problems which required an operation, thus delaying her departure. In July 1967, Young joined Siddall in India. Young and Siddall took clothing and personal effects necessary for an indefinite stay in India. During 1967, the petitioners owned a condominium in Marina Del Rey, California. Upon *227 her departure for India in July 1967, Young leased this condominium to William Bundy in an oral agreement providing for a tenancy from month-to-month for an indefinite period. The petitioners also owned two automobiles at the time of their departure to India. One automobile was sold and the other one was stored in a garage of the condominium to be available for use by petitioners on business or vacations to the United States. Petitioners' furniture was left in the condominium. When shooting a motion picture or television show abroad it was customary for the cast, crew and production staff to live under the same roof. Therefore the petitioners lived in employer-furnished hotel rooms during their stay in India and ate the meals prepared by the hotel's staff. King Brothers maintained a working relationship with an Indian movie studio and used its facilities.As a result of this relationship, the petitioners were invited to receptions and other social events sponsored by that studio. In addition, the petitioners became members of the Juhu Beach Club and the Beach Candy Club. Membership in the Juhu Beach Club was open to both Indian Nationals and foreigners, although most members *228 were foreigners. Membership in the Beach Candy Club, a swimming club, was open only to foreigners although this policy was being reconsidered in 1967. While the petitioners' visas were temporary in nature, it was understood that they could be easily renewed for the time necessary to complete shooting the "Maya" episodes. This time was necessarily limited to a period of several years because stars of the show were boys playing boys' roles, and it was clear to the petitioners that they could not continue playing those roles indefinitely. King Brothers was under contract with M.G.M. to produce twenty-six episodes of "Maya". This contract contained a clause providing for cancellation after eighteen episodes if the show's ratings were poor. The ratings were to be determined within a six-week period which included part of September 1967. As no episodes were to be filmed during this period, King Brothers decided to send Siddall back to California for a short period to audit those portions of M.G.M.'s books relating to post production charges. The trip was to be temporary in nature, and Siddall was to return to India when shooting resumed. During the time Siddall resided in Bombay, *229 India, he paid taxes on the income earned there and he filed a return with the Indian Government. On September 20, 1967, Young and Siddall left Bombay, India for the United States. Prior to their departure Siddall obtained a return visa and paid the fee therefor. This return visa expired on October 9, 1967, and permitted a continued stay in Bombay, India, up to and including January 19, 1968, at which time it would have to be renewed. When the petitioners returned to California in September of 1967, they brought only their suitcases, leaving all of their other possessions in India. With the permission of Bundy, petitioners moved into the guest room of their condominium. Four weeks after the petitioners' return to California, and after Siddall had commenced work here for his employer, N.B.C. Productions cancelled the television show and Siddall's job position was terminated. After learning that his job with King Brothers had been terminated, Siddall immediately began looking for a new overseas position. In this regard he contacted M.G.M. for possible leads, collaborated with one Bud Shelton with respect to certain movie scripts to be used for shooting in India, and continued *230 to look for an opportunity to again go abroad to the Far East, it having always been his intention during this period to return to the Far East. Siddall sought only employment that would take him overseas because he believed such positions to be more lucrative than jobs in the United States. He turned down several offers for positions that were in the United States. Bundy, by apparent agreement with Young and Siddall, moved out of the condominium in December 1967. Siddall intended to remain in the United States until he obtained an overseas position. Young worked as a secretary for Bundy prior to her departure in 1967 to India. After her return to the United States in September 1967, Young resumed her employment with Bundy.
Siddall was referred by M.G.M. to 20th Century Fox concerning possible employment in Japan on location for the shooting of "Tora Tora Tora". Siddall obtained that position and obtained, while in Los Angeles, a visa to Japan on July 19, 1968, good for a period of forty-eight months. His position with 20th Century Fox was that of Location Auditor. Siddall arrived in Tokyo, Japan on July 24, 1968, and except for brief side visits to Okinawa and Hong Kong, *231 remained in Tokyo, Japan until May 21, 1969. On May 21, 1969, Siddall returned to the United States. For the tax years 1967, 1968, and 1969 Siddall filed income tax returns as a foreign resident, stating that the income during those periods was earned abroad and not subject to United States income tax. Neither Young nor Siddall included any amounts with respect to the income earned by Siddall while in India. Young reported $3,200 as income and $452 as Federal income taxes withheld, both of which arose out of her employment with Bundy. Siddall reported income of $1,300 and taxes withheld of $230, both of which arose as a result of the work done by him for King Brothers in the United States. OPINION The issues for decision are (1) whether Siddall was a bona fide resident of a foreign country or countries for "an uninterrupted period which includes a taxable year" under section 911 and (2), alternatively, whether Siddall and Young were domiciled in the State of California during 1967. Section 911[3] excludes, subject to limitations on amount, from the gross income of a citizen of *232 the United States foreign source income earned during a period in which the taxpayer is a bona fide resident of a foreign country or countries for "an uninterrupted period which includes an entire taxable year." Once a bona fide residence in a foreign country has been established, temporary visits to the United States on vacation or business trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country. Section 1.911-2(a) (2), Income Tax Regs. The question is primarily one of fact. Leonard Larsen, 23 T.C. 599 (1955). *233 Siddall contends that he became a bona fide resident of India on January 4, 1967, and that he retained a residency in foreign countries from that date through May 21, 1969, upon his return from Japan. Young contends that Siddall was a bona fide resident of India as of December 26, 1966. Both petitioners, however, contend that the period between September 1967 and July 1968 represented only a temporary visit to the United States by Siddall which did not deprive him of his bona fide residency in foreign countries. If it is determined that Siddall was a bona fide resident of foreign countries during his presence in the United States during the period from September 1967 to July 1968, Siddall would have been a bona fide foreign resident for an uninterrupted period which includes one taxable year for either of two years as follows: (1) Under Young's contention, foreign residency extends from December 1966 through May 1969 - including taxable years 1967 and 1968, and (2) under Siddall's contention, foreign residency extends from January 1967 through May 1969 - including taxable year 1968. Under either theory Siddall would meet the requirements of the statute and the amounts earned in *234 India in 1967 would be excluded from gross income. Respondent does not concede that Siddall became a bona fide resident of India, but contends that it is irrelevant in determining the issue as stated. Our discussion shall assume that Siddall was a bona fide resident of India during his time there and a bona fide resident of Japan in July 1968. Respondent contends that Siddall's foreign residency ended in late 1967 and did not become reestablished until his arrival in Japan. He contends that the time spent in the United States during 1967 and 1968 did not come within the temporary visit rule of section 1.911-2(a) (2), Income Tax Regs., and therefore Siddall's period of foreign residencies did not include an entire taxable year. Section 911 is, in substance identical to section 116(a), Revenue Code of 1939 except for changes with regard to the limitation percentages allowable. H. Rept. No. 1337, 83d Cong., 2d Sess., A253 (1954), and S. Rept. No. 1622, 83d Cong., 2d Sess., 420 (1954). Therefore, cases dealing with section 116 of the 1939 Code are relevant for *235 a determination of the present case. In Anne Laughlin, 27 T.C. 23 (1956), the taxpayer was a resident of various foreign countries during 1947. On December 21, 1947, she returned to the United States to work and obtain medical treatment not available elsewhere. While in the United States, the agency for which the taxpayer worked discontinued operations leaving her without a job. In October 1948, the taxpayer departed the United States for employment with another agency in Bulgaria. The taxpayer contended that she retained foreign residency during the entire time that she was in the United States. This Court, in holding that the taxpayer was a resident of the United States during the period she was in the United States, held that the taxpayer's intention of obtaining work in another foreign country was not sufficient to find that she was a resident of a foreign country. "Any desire she may have retained during that period to leave this country would not be sufficient to make her a bona fide resident of any foreign country." Anne Laughlin, supra at 26. In Robert A. Henningsen, 26 T.C. 528 (1956), affd. 243 F.2d 954 (C. *236 A. 4, 1957), the taxpayer was a resident of China until November 1941, when he returned to the United States. Upon his return, taxpayer intended to return to China but the outbreak of war prevented him from doing so. This Court held that the taxpayer became a resident of the United States for two reasons. First, the taxpayer did not intend to return to China for a period of two years after he arrived in the United States, thus indicating an intent to make the United States his residence during that period. Second, the outbreak of war required the taxpayer to abandon his fixed intention to return to China in two years and be replaced by a ""mere floating intention, indefinite as to time."" Thus, this Court held that the taxpayer intended to be a resident of the United States until the conditions preventing his return were eliminated. As noted before, we assume arguendo that Siddall became a bona fide resident of India at least on January 4, 1967 and a bona fide resident of Japan in July 1968. When Siddall and Young returned to the United States in September 1967, they both intended to return to India within a short period of time. While in the United States, Siddall lost his *237 job in India by virtue of the cancellation of the "Maya" television series. Petitioner testified that he intended to remain in the United States until he could again obtain employment in the Far East. We hold, under the authority of Laughlin and Henningsen, supra, that Siddall was not a bona fide resident of a foreign country or countries for an uninterrupted period including an entire taxable year. As stated in Laughlin, Siddall's desire to again work overseas is not sufficient to make him a bona fide resident of any foreign country for purposes of section 911. Petitioners rely for support of their position on the case of Carpenter v. United States, 348 F. Supp. 179 (N.D. Tex., 1972), on appeal (C.A. 5, Jan. 23, 1973). That case is clearly distinguishable from this case on its facts. In Carpenter, the taxpayer was a resident of Saudi Arabia from 1958 through 1962. At that time he entered into an oral agreement to enter into a partnership to operate out of Lebanon. In June 1962, the taxpayer returned to the United States to await the completion of business arrangements. In April 1963, taxpayer flew to Lebanon, and entered into the partnership as *238 planned. The district court held that the taxpayer was a resident of Lebanon from the time he left Saudi Arabia. In the present case Siddall departed India with an intent to return. This was curtailed by the cancellation of the "Maya" production. From that time on Siddall intended to remain in the United States and obtain employment overseas. This is contrary to the Carpenter case wherein the taxpayer had made arrangements to go to Lebanon prior to his return to the United States for vacation and medical treatment and subsequently went to Lebanon as planned. Petitioners also rely on the district court's holding, in Carpenter, that it was sufficient to find that the taxpayer was a resident of the Middle East" area to come within the provisions of section 911. We reserve judgment on the question of whether a geographical area of the world will suffice for determining the residency requirements of section 911(a) (1); even if we accept the position stated in Carpenter, Siddall's intent to return to the Far East was merely a desire on his part to obtain a job there as in the Laughlin case rather than a detailed plan to travel there after a temporary visit to the United States. *239 Having determined that Siddall was not a resident of a foreign country for an uninterrupted period including a taxable year, we must now determine the taxability of the amounts earned while in India. The law of the jurisdiction in which the taxpayer is domiciled is the appropriate law to be utilized in determining whether income earned is community or separate property. Robert P. Lord, 60 T.C. 199, 204 (1973), on appeal (C.A. 9, Oct. 15, 1973); and Marie R. Owens, 26 T.C. 77, 88 (1956). If Siddall is found to be domiciled in India during 1967, the amount earned while working there would be considered to be his separate property includable only in his income under the laws of India. If Siddall is found to be domiciled in California during this time, then these earnings would be considered community property to be reported equally by Young and Siddall. Residence coupled with the purpose to make the place of residence one's home are essential elements of domicile. Texas v. Florida, 306 U.S. 398 (1939). An individual, however, may have a residence *240 apart from his place of domicile. Smith v. Smith, 45 C.2d 235, 288 P.2d 497 (1955). Since we have assumed that Siddall established residency during his time in India, the crucial question is his intent to change his domicile from California to India. Since intention is a subjective matter, the determination depends greatly on one's acts. Chapman v. Sup. Court, 328 P.2d 23 (1958). In this case Siddall traveled to India to perform services for King Brothers. He took only clothing and personal effects with him. While there, he obtained a liquor permit allowing him to obtain alcoholic beverages which was not available to Indian nationals. Siddall joined two beach clubs, one of which was open only to foreigners. We believe the overall nature of the events support the position of respondent that Siddall was domiciled in California during the period he resided in India. The contract under which the "Maya" television show was to be produced required twenty-six episodes to be produced in India. The contract contained a cancellation clause after eighteen episodes *241 if the show's ratings were poor. King Brothers utilized the facilities of an Indian movie studio to make its productions.Siddall, and other members of the crew, stayed at employer-furnished hotel rooms during their entire stay in India. Petitioners, however, retained their condominium, which they rented to a friend and former employer on a month-to-month lease. They also retained a car which they kept in the condominium. All of their household goods were left in the condominium. Both petitioners also maintained their voting registration in California. Because of the uncertain nature of Siddall's employment in India and the actions of retaining very strong ties to the State of California, we find that he did not intend to become domiciled in India and therefore he remained domiciled in California. With regard to Young, the same factors noted above apply to require a finding that she was also domiciled in California during 1967. Furthermore, Young remained in the condominium until July 1967, and continued to work for Bundy. After the "Maya" series was cancelled she started working for Bundy again. We find that she was domiciled in California during 1967. Since both petitioners *242 were domiciled in California in 1967, under the laws of that state the income earned by each constitutes community property reported one-half by each. Section 5110, California Civil Code (1970). Furthermore, each petitioner is entitled to one-half of the credit for income taxes withheld. See section 1.31-1(a), Income Tax Regs.
Decisions will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated. ↩
2. Those returns were not audited with respect to the issue before this Court, and the status of the filing of those returns is not in question. ↩
3. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule. - The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country. - In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable years shall be computed by applying the special rules contained in subsection (c). ↩