[Sac. No. 379. Department Two.—April 26, 1898.]

In the Matter of the Estate of THEODORE E. WEED, Deceased. MARY L. GOLDY, Appellant, v. H. C. DUNCAN, Public Administrator, Respondent.

ESTATES OF DECEASED PERSONS—CONTEST FOR LETTERS OF ADMINISTRATION—RESIDENCE—HUSBAND AND WIFE—FINDING.—Upon a contest for letters of administration between the public administrator and a niece of the decedent, who was next of kin, where it appeared that she and her husband formerly resided in this state, but some five years previously had gone to an eastern state, taking all their property with them, with the intention of remaining there for an indefinite time, as a place of present domicile, notwithstanding a floating intention to return to this state at some future time, the facts show a loss of their residence in California; and the residence of the husband being the residence of the wife, and it appearing that she returned to this state for the purpose of administering upon the estate of the ·decedent, leaving her husband at their home in the east, who came on as a witness the day before the trial, a finding that she was not a *bona fide* resident of this state when her petition was filed nor at the time of trial of the contest for letters, is sustained by the evidence, notwithstanding the declaration of the husband and wife that they always considered California as their home.

ID.—BONA FIDE RESIDENCE—MIXED QUESTION OF LAW AND FACT—CODE PROVISIONS.—The question whether a person is a *bona fide* resident of the state or not is a mixed question of law and fact, to be determined by the court, upon the principles of law relating to residence and nonresidence embodied in sections 52 and 1239 of the Political Code, which are to be construed together as parts of the same statute.

APPEAL from an order of the Superior Court of Yolo County granting letters of administration to the public administrator, and refusing letters to the next of kin of a deceased person, and from an order denying a new trial. W. H. Grant, Judge.

The facts are stated in the opinion.

Johnson, Linforth & Whitaker, for Appellant.

Byron Ball, and J. C. Ball, for Respondent.

BELCHER, C.—Theodore E. Weed died intestate in the county of Yolo, in this state, on the twenty-sixth day of March, 1896, being at that time a resident of said county, and leaving an estate therein, consisting of real and personal property, of the value of about twenty thousand dollars. He left no wife or children and no next of kin residing in this state, unless the appellant, Mary L. Goldy, was so residing.

On April 2, 1896, H. C. Duncan, the public administrator of the county, duly filed a petition praying that letters of administration upon the said estate be issued to him, and thereafter, on the thirteenth day of the same month, Mary L. Goldy filed her petition, stating that she was a niece of said decedent, and praying that letters of administration upon the estate be issued to her.

The two petitions were heard together, and thereafter, on June 5, 1896, the court made and filed its findings of fact and conclusions of law, and ordered and adjudged that letters of administration on the estate be issued to the petitioner, H. C. Duncan. The court found "that the petitioner, Mary L. Goldy, was not a *bona fide* resident of this state at the time her petition was filed herein, nor was she a *bona fide* resident of this state at the time of the trial," and as a conclusion of law that she was not competent or entitled to serve as administratrix.

There are two appeals in the case. The first was taken August 3, 1896, and is from the order granting the petition of the public administrator for letters of administration upon the estate of said deceased and refusing appellant's application for such letters; and the second was taken February 7, 1897, and is from an order denying appellant's motion for a new trial.

Appellant contends that the findings were not justified by the evidence, and whether they were justified or not is the only question which need be considered.

At the hearing J. W. Hughes was called as a witness for appellant and testified that he had been the legal adviser of the said

deceased for many years, and at the time of his death had in his possession many of his papers. He then stated: "Upon the death of Mr. Weed I telegraphed the fact to his relatives at Stamford, Connecticut, and for some of them to come out and take charge of the estate. In response to my telegram, a brother of Mrs. Goldy came out immediately; he had never been in California before. I learned from him that his sister, Mrs. Goldy, had some years before lived in California, and in response to telegrams she came out, and on arriving at my office in Sacramento signed her petition for letters of administration herein. Several telegrams passed between us. I can produce them." On objection of counsel for appellant the telegrams were excluded by the court.

S. N. Goldy, the husband of appellant, was called as a witness and testified, in substance, that his business was that of a civil engineer, and that he and his wife came to San Francisco in 1889 and rented a furnished flat at No. 180 Clinton Park in said city, where they lived until the summer of 1891, when they went east; that when he came to San Francisco he established an office on California street in that city, and when he went east he did so for the purpose of perfecting an invention on which he was then at work and obtaining patents thereon; that he then expected it would require eighteen months or two years to perfect his invention and obtain patents thereon, and intended, as soon as that should be accomplished, to return to San Francisco and establish a business there in connection with his invention; that his invention was a machine for cutting and polishing hard woods, making chair rounds, wagon and buggy spokes, fancy house furnishings, moldings and picture frames, and working up all character of hard wood requiring a high polish, and that the Pacific coast, and particularly San Francisco, was peculiarly adapted to the establishment of such a business; that in 1890 he registered and voted in San Francisco, and ever since he moved there in 1889 he had always considered and still considered that city his home, and had no other plans than to reside there and carry on the business above described; that while in the east he registered at hotels as from San Francisco, and spent most of his time at Bridgeport, Connecticut, where he had a friend, engaged in the foundry and machine business,

whom he employed to construct the greater portion of the cast-
ings and other parts of his invention which were made of iron
and steel and could be constructed more cheaply there than in
California.

On cross-examination, the witness testified that he arrived in
Sacramento the day before the trial, and that he had not been
in San Francisco since he left there in the summer of 1891; that
he completed the construction of his machine five or six months
before he heard of the death of Mr. Weed, and had not made any
preparation to return to California.

He was then asked by counsel for respondent:

"Q.  If your machine can be more economically constructed
in the east, and the hard woods procured there in large quan-
tities, what reason can you give for saying that you intended to
return to California?  A.  Well, I expected to go into the busi-
ness of fruit raising with Mr. ———, who was to furnish the
capital.

"Q.  Where did you expect to locate your fruit farm?  A.  At
Redding, California.

"Q.  Where is Mr. ———?  A.  He is dead.  He died about
two years ago."

Mrs. Goldy was also called as a witness in her own behalf, and
testified substantially as her husband did in regard to their com-
ing to San Francisco in 1889, residing there until 1891, and then
returning east.  She said: "During all the time of our absence
I considered California as our home, and intended to return to
this state.  I might not have returned so soon if it had not been
for the death of my uncle."

And on cross-examination she said: "When we went east in
1891 we gave up our rooms and took everything we owned with
us."  "While in Bridgeport we rented rooms already furnished,
. . . . where we lived for over two years.  We were living there
when we heard of uncle's death.  My husband always returned
to Bridgeport when away on business."  "I would not have re-
turned to California when I did had not uncle died.  I came
out to administer on his estate, and signed the petition for ad-
ministration the day I arrived in Sacramento, before I went to
San Francisco.  When we heard of uncle's death my brother
started for California, expecting to administer on the estate.

. . . . After my brother arrived in California we found out that he could not administer on the estate, and, as I had at one time lived in California, they had me come out to administer on the estate. I am living in the same rooms in San Francisco that we occupied at No. 180 Clinton Park in 1890. I found them vacant and rented them by the month already furnished."

The above was, in substance, all the evidence given at the hearing, and the question is, Does it appear therefrom that appellant was a *bona fide* resident of this state at the time she made her application for letters, or at the time of the trial? If not, she was, under our statute (Code Civ. Proc., sec. 1369), incompetent to serve as administratrix, and her application was properly denied.

Whether appellant was a *bona fide* resident of the state or not was a mixed question of law and fact to be determined by the court.

We have no statute declaring what acts are necessary to constitute a *bona fide* residence in this state, but there are several provisions in the codes in relation to residence and nonresidence. Among others are the following: Section 52 of the Political Code, under the heading: "Persons composing the people of the state," provides: "Every person has, in law, a residence. In determining the place of residence, the following rules are to be observed: 1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose; 2. There can only be one residence; 3. A residence cannot be lost until another is gained; . . . . 5. The residence of the husband is the residence of the wife; . . . . 7. The residence can be changed only by the union of act and intent."

Section 1239 of the same code, in regard to the residence of persons claiming a right to vote in this state, provides: "1. That place must be considered and held to be the residence of a person in which his habitation is fixed, and to which whenever he is absent he has the intention of returning; . . . . 6. If a person remove to another state with the intention of making it his residence he loses his residence in this state. 7. If a person remove to another state with the intention of remaining there for an indefinite time, and as a place of residence, he loses his

residence in this state, notwithstanding he entertains an intention of returning at some future time."

We see no conflict in the above provisions, and they are therefore to be construed together as parts of the same statute. (Pol. Code, sec. 4480.) And in accordance with the law as thus declared, Mr. Freeman, in his note to *Berry v. Wilcox,* 48 Am. St. Rep. 714, states the rule to be as follows: "If a person actually removes to another place with an intention of remaining there for an indefinite time, and as a place of present domicile, it becomes his place of residence or domicile, notwithstanding he may have a floating intention to return to his old residence at some future time." (Citing several cases.)

The question then is, Did Goldy and his wife lose their residence in California when they moved east, taking with them all of their property, and established a residence there which they maintained for nearly five years? That their return to the east was for an indefinite time was shown by the fact that it was to perfect an invention and construct a machine, which he expected would require eighteen months or two years, but which was not in fact completed until five or six months before he heard of the death of Mr. Weed. And after it was completed he made no preparations to return to California.

At the commencement of his testimony Mr. Goldy stated: "I reside at 180 Clinton Park, San Francisco, California, and have resided there since the year 1889," but this was evidently a mere fiction of the imagination. Further on he stated that, as soon as his invention should be perfected and patents obtained therefor he intended to return to San Francisco, and "to introduce and establish a business in connection with said invention." But this was inconsistent with other portions of his testimony, and particularly with his statement that, as a reason for returning to California, he expected to go into the business of fruit raising at Redding with a man who had been dead for two years at the time of the trial.

Mrs. Goldy came back to California to administer on the estate, and on the day of her arrival in the state she signed her application for appointment as administratrix. She left her husband at their home in the east and would not have come at that time if her uncle had not died. But her husband's residence

was her residence, and if he then had no *bona fide* residence in this state we fail to see how she could have had. To be a *bona fide* resident of the state one must really and in good faith have established a home or place of residence therein, where he lives, and to which when away on business or pleasure he returns.

We conclude, therefore, in view of all the evidence, that both Mr. and Mrs. Goldy lost their residence in this state when they left the state in 1891 and went east to live.

But it is urged that, conceding appellant lost her residence in California when she went east with her husband, she regained it immediately upon her return to the state, and became, therefore, entitled by her new residence to letters in preference to the public administrator. Counsel say: "From the moment she set her foot on California soil, in April, 1896, and declared her intention to be a resident of the state, and to remain permanently within its borders, she became a *bona fide* resident of California, just the same as though she had been born here and never passed beyond its limits."

This theory cannot, in our opinion, be sustained; and in effect a similar theory was, in the case of *In re Donovan,* 104 Cal. 623, held untenable.

It results that both of the orders appealed from should be affirmed.

Chipman, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion both the orders appealed from are affirmed.

Henshaw, J., McFarland, J., Temple, J.