IN THE MATTER OF THE ESTATE OF DAVID LEO FIALKOFF, DECEASED
ROSA FIALKOFF, APPELLANT, *v.* IRENE NEVIL, RESPONDENT.

No. 4606

April 28, 1964

391 P.2d 740

*David Goldwater,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, and *Val Linton,* of Los Angeles, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Rosa Fialkoff sought probate of the will of her late husband, David Leo Fialkoff, in Clark County, Nevada. Irene Nevil, daughter of the decedent by a former wife, filed a contest against the admission of the will to probate on the grounds (1) that decedent was a domiciliary of France at the time of his death, (2) that the court was without jurisdiction to admit the will to probate for ancillary administration because of assets brought into Nevada after decedent's death, and (3) that appellant is estopped by reason of the admission of the will to probate and administration of the estate in France.

The court below denied admission of the will to probate and the petitioner appealed from such denial.

Appellant devotes a material part of her brief to the third ground stated—that of estoppel. However, as the court decided this issue in appellant's favor, she is in no way aggrieved and the question requires no consideration here.[1]

As to the two remaining issues, appellant states in her opening brief:

"The Court below found, as a matter of law, that decedent died 'domiciled' in France. The Court refused therefore, to admit the Will to ancillary probate of the estate consisting of certificates of shares of stock in a Finnish corporation and which were physically transported to Nevada in 1956, two and a half years after

---

[1]The issue of estoppel arose under the contention that Rosa was estopped from testifying that the decedent was domiciled in Clark County, Nevada, by reason of her testimony in the French probate to the effect that he was domiciled in Paris, France, at the time of his death.

decedent's death. Appellant agrees. *Appellant acknowledges that if decedent did not die 'domiciled' in Nevada, then the Court was without jurisdiction to admit his Will to ancillary probate because, at the time of his death, decedent left no substantial property within the State of Nevada."* (Emphasis is by appellant.)

The trial court had held that decedent "at the time of his death on December 14, 1953, was a domiciliary of Paris, France, and not of Las Vegas, County of Clark, State of Nevada * * *."[2] French law appears to be similar. Article 110 of the Civil Code provides: "The place where the estate shall be proved shall be determined by the domicile."

Under New Repertoire Dalloz, "Estates," No. 6, the following appears: "The estate shall be probated at the last domicile of the decedent; the law attaches itself * * * to the domicile and not to the residence."

There remains then for determination a mixed question of fact and law (In re Weed's Estate, 120 Cal. 634, 53 P. 30) as to decedent's domicile at the time of his death in Paris. More narrowly, the question would be whether the court's holding that the decedent was a domiciliary of Paris and not of Clark County, Nevada, at the time of his death, finds substantial support in the record. As the decedent became a resident of Los Angeles, California, from 1941 to 1947, and became a naturalized citizen of the United States in 1947, after which he returned to his former residence at 109 Rue Erlanger in Paris, where he had lived prior to 1941, and thereafter in January, 1953, came to Clark County, Nevada, established his residence there and obtained a decree of divorce on March 23, 1953,[3] remarried, executed his will, saying that he "was of Clark County, Nevada," and in early June, 1953, returned to France with his new wife,

---

[2]NRS 136.010 reads in pertinent part as follows: "1. Wills may be proved and letters testamentary or letters of administration granted in the county of which the deceased was a resident at the time of death, whether the death occurred in that county or elsewhere * * *.

"2. The estate of a nonresident decedent may be settled by the district court of any county wherein any part of the estate may be."

[3]Validity of the divorce decree is not questioned.

taking up residence at 109 Rue Erlanger, Paris, where they lived until decedent's death, the question becomes somewhat more narrowed to the following: Is there substantial evidence to support the conclusion that after decedent's return to France in 1953, he changed his domicile from Clark County, Nevada, to Paris, France, where he maintained it until and including the date of his death.

We might rest our affirmance upon the position taken by appellant in her opening brief, wherein appellant states that respondent had failed to sustain the burden of proof that decedent had changed his domicile from Clark County, Nevada, to Paris, France. In this, appellant asserts that this is the only genuine issue in the case, and that, in attempting to support the burden of proof respondent produced five witnesses who testified to declarations of the decedent that France was his "principal establishment," whereas appellant on the other hand had produced six witnesses who testified with equal positiveness that decedent repeatedly declared during the last six months of his life that Nevada was his true home and "principal establishment." Following this, appellant frankly admits that "the slight numerical superiority of appellant's witnesses is of no weight in and of itself," and that the witnesses are listed "merely to illustrate that the evidence as to decedent's declaration is fairly and evenly divided." This patently left for determination, a question of fact for the trial court, with which determination this court will not interfere if there was substantial evidence to support it.

In addition to the testimony as to declarations by the decedent of his intent, much substantial evidence was introduced on behalf of respondent. Briefly such evidence is to the following effect.

Almost immediately after decedent's Nevada divorce and his marriage to appellant, decedent and appellant left for New York, visited with respondent and left for Paris and took up residence at decedent's former quarters at 109 Rue Erlanger, Paris. They redecorated their living quarters and from this residence decedent made several

business trips to various European countries. None of his business interests was liquidated. He renewed his French identity card on a basis that could be done only by a foreigner who intended to live permanently in France. His conferences with his business associates indicated that he was going to live permanently in Paris or retire on the French Riviera. Following his death on December 14, 1953, at 109 Rue Erlanger, Paris, probate proceedings were initiated in France and later in Germany. In these proceedings appellant stated under oath that the decedent was a domiciliary of Paris.[4]

Appellant, decedent's new wife, a foreigner, held only a tourist's limited visa and could not have lived permanently in the United States under such visa. Decedent, before leaving the United States, divested himself of all properties owned in this country. He shipped his American car to Europe. He invited his daughter, respondent herein, to come to Paris in 1954, to live with him and his new wife at their home so that his daughter could continue her studies in Paris. Decedent had maintained at all times the apartment lease in Paris. He did not liquidate his business interests, whether in France, Germany, Switzerland, Belgium, or Finland. He did not rent or buy any real property in the United States, nor register to vote here, nor acquire any business here, nor join any clubs, social or church activities.

Support of the French administration of his estate was accorded by appellant's delivery to her attorney in Paris of decedent's *carte de sejour ordinaire* and the certificate of decedent's death showing his domicile to be in Paris, together with two certificates of domicile from the two concierges of the Paris apartment house indicating decedent's domicile at the time of his death to be Paris. This was supported by eminent French and American counsel. The certificate of the French *notaire,* following the briefs and opinions of counsel, established that at the time of his death decedent was a domiciliary of Paris.

---

[4] Reference to this by the lower court in rejecting the issue of estoppel was to the effect that it could be used in weighing appellant's testimony.

She profited thereby by becoming the "universal lega-taire." In the German ancillary probate administration, based on the primary French probate administration, the question of decedent's being a domiciliary of Paris was again resolved.

Other evidence in the record might be cited. The record on appeal contains over 400 pages, and a box of documents admitted as exhibits, some six inches high.

With the narrowing of the issues as hereinabove set forth, there is ample support in the record of the lower court's finding that decedent at the time of his death was a domiciliary of Paris, France, leaving no estate in Clark County, Nevada.[5]

The judgment is affirmed with costs.

THOMPSON, J., and BOWEN, D. J., concur.

MCNAMEE, J., being disqualified, the Governor commissioned Honorable Grant L. Bowen, Judge of the Second Judicial District Court, to sit in his place.

---

[5]The record contains a reference to a bank account of $37.08 left by decedent in Clark County, but this was checked out by appellant prior to the petition for probate.