RICHFIELD OIL CORPORATION, A FOREIGN CORPORATION, AND HUMPHREY, INC., APPELLANTS, v. HARBOR INSURANCE COMPANY, AND HARTFORD ACCIDENT AND INDEMNITY COMPANY, RESPONDENTS.

No. 5556

March 31, 1969            452 P.2d 462

*Elwin C. Leavitt,* of Las Vegas, for Appellants.

*Foley Brothers,* of Las Vegas, for Respondent Harbor Insurance Company.

*Singleton, DeLanoy, Jemison & Reid,* and *George W. Johnson,* of Las Vegas, for Respondent Hartford Accident and Indemnity Company.

## OPINION

By the Court, WILKES, D. J.:

Prior to the event upon which this action is based Respondent Harbor Insurance Company had issued a fire insurance policy to Pacific Fruit Express Company covering Pacific's building in Las Vegas, Nevada. After the building burned Harbor paid Pacific $5,708.06 for the loss. Harbor was subrogated to the rights of Pacific by an agreement and instituted this action against Richfield Oil corporation, Fred Humphrey and others alleging negligence.

Richfield and Humphrey answered Harbor and also filed a Third Party Complaint wherein Hartford Accident and Indemnity Company was named as Third Party Defendant. Hartford answered this Complaint. Richfield and Humphrey asserted that if liability was established the responsibility to respond in damages was that of Hartford, and not Harbor.

On August 17, 1964, George Evans, an employee of Bilt-Rite Construction Company, while acting within the scope of his employment, drove a pick-up truck alongside the loading dock at Richfield's Bulk Plant in Las Vegas, Nevada, for the purpose of making a purchase of a petroleum product. The plant was being operated by Humphrey, Inc., a commission agent of Richfield. Mr. Bernard Spink, the plant manager of Humphrey, was there to serve customers at the time and was in charge of the bulk plant. He set about to take care of Bilt-Rite's needs.

Spink commenced the process of transferring a petroleum product from a gasoline drum on the dock into another such

barrel situated in the truck. As he removed the bung from the drum on the dock the product spewed up and out of the drum showering Spink and the area. Spink immediately ran along the dock to a small gasoline powered engine and was seen to extend his finger to the engine at which time a "whoof" occurred. Spink and the immediate area were engulfed in flames which soon spread. Richfield's plant was destroyed and Pacific's building on some adjacent ground was also burned.

The gasoline powered engine was used to power a transfer pump which in turn was used to transfer liquid petroleum products from drum to drum at the bulk plant. The small engine was stopped by pressing a metal strap to the spark plug as is commonly the case with gasoline powered lawn mowers. When this is done a spark is or may be produced.

Appellants complain that Harbor has not met the burden of establishing negligence on the part of Appellants. We feel that this assignment of error is without merit.

The Court has repeatedly held that where a question of fact is left to the determination of the trial court, the appellate court will not interfere with the trial court's determination if there is substantial evidence to support it. Austin v. Smith, 73 Nev. 155, 311 P.2d 971 (1957); Cram v. Durston, 68 Nev. 503, 237 P.2d 209 (1951); Fialkoff v. Nevil, 80 Nev. 232, 391 P.2d 740 (1964); Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962); Foster v. Bank of America, 77 Nev. 365, 365 P.2d 313 (1961). Nor in cases tried without a jury will the Supreme Court substitute its judgment for that of the trial judge as to the weight given to the evidence. Gersenhorn v. Stutz, 72 Nev. 293, 304 P.2d 395 (1956).

In this case there was evidence that the bulk plant was a flammable area; that the gasoline engine is a spark producing device; that a spark producing device used in a flammable area can cause ignition at any time; that the use of a portable gasoline driven transfer pump in a flammable area is not an accepted procedure; that the pump was stopped by pressing a piece of metal on top of the spark plug which generated a spark; that upon the petroleum product spewing out of the drum Appellant's agent Bernard Spink was seen to immediately run to the gasoline driven engine and extend his finger to the same at which time there occurred a "whoof" resulting in the area becoming engulfed in flames; that a spark is being generated in a gasoline engine at all times and is capable of producing a spark at any time which can ignite vapors. This is

but a part of the total evidence. The trial court's finding of negligence is supported by substantial evidence. We will not disturb this finding.

Appellants next contend that they are not liable in this case for the reason that Hartford is primarily liable under the loading and unloading clause of its policy of automobile insurance[1] issued to Bilt-Rite Construction Company and which provided coverage for the pick-up truck.

Two doctrines have evolved concerning the construction to be given the phrases "arising out of the . . . use" and "loading and unloading." Wagman v. American Fidelity & Casualty Company, 109 N.E.2d 592 (N.Y.App. 1952).

By the more narrow construction, referred to as the "coming to rest" doctrine, "unloading" has been held to embrace only the operation of taking the goods from the vehicle to a place of rest out of the vehicle. "Loading" would embrace only the operation of taking the goods from a place of rest to the place of rest within or on the vehicle. Stammer v. Kitzmiller, 276 N.W. 629 (Wisc. 1937); American Casualty Co. v. Fisher, 23 S.E.2d 395, 144 A.L.R. 533 (Ga. 1942).

The majority of the courts have adopted a broader construction and have held that the phrases in question comprehend not only the immediate transfer of the goods but also that any occurrence during, or arising out of the, process is covered. Raffel v. Travelers Indemnity Co., 106 A.2d 716 (Conn. 1954); American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co., 179 F.Supp. 699 (D.C.Md. 1959); Spurlock v. Boyce-Harvey Machinery, Inc., 90 So.2d 417 (La.App. 1956); Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (D.C. Mich. 1961); Wagman v. American Fidelity & Casualty Company, supra; August A. Busch & Co. v. Liberty Mut. Ins. Co., 158 N.E.2d 351 (Mass. 1959); see also Annot., 95 A.L.R.2d 1114, 1134.

Whether adopting one of the specific theories described above, or speaking to the individual circumstances of an accident or injury, the decisions in this area almost universally refer, at least implicitly, to the need for some causal relationship between the unloading process and an accident or injury

---

[1]"COVERAGE C—PROPERTY DAMAGE LIABILITY–AUTOMOBILE: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or *use* of any automobile." (Emphasis added.)

"3. DEFINITIONS: (e) *Use:* Use of an automobile includes the loading and unloading thereof."

before coverage under a policy exists. American Auto. Ins. Co. v. American Fidelity & Cas. Co., 235 P.2d 645 (Cal.App. 1951); Raffel v. Travelers Indemnity Co., 106 A.2d 716 (Conn. 1954); Nichols & Co. v. Travelers Ins. Co., 179 N.E. 2d 593 (Mass. 1962); see also, Annot., 95 A.L.R.2d 1114, 1146.

When these decisions are examined closely it can be seen that the causal relation requirement is actually only another means of, or a part of, any interpretation of the scope of coverage since it means some connection must exist between the accident or injury and some "use", more specifically the "loading" or "unloading" as the case may be, of the insured vehicle. Johnson, Drake & Piper, Inc. v. Liberty Mutual Insurance Co., 258 F.Supp. 603 (D.C.Minn. 1966).

Thus, while a causal relation rule or test may appear simpler and more precise than the wide confusion and divergence generated by the choice between the variations of the "coming to rest" and "complete operation" rules, the decisions employing or emphasizing this factor have generally merely found another term to define besides "loading" or "unloading". Probably the recent emphasis on the causal relation factor results from a desire to avoid the inconsistency in the case law as regards "loading-unloading" clauses. Unfortunately, the product of these attempts has been an equally wide divergence among the authorities as to what constitutes a causal relation on a sufficient causal relation, *i.e.*, those jurisdictions wishing to establish broad coverage under "loading-unloading" clauses require little in the way of causal relation and those jurisdictions favoring a narrow scope of coverage seek more definite causal relation. Johnson, Drake & Piper, Inc. v. Liberty Mutual Insurance Co., supra.

Even though the cases favoring a narrow scope of coverage find such coverage only if the loading or unloading is the "efficient and predominating cause of the accident or injury" or is "an active factor" in causing the loss or there is absent "some independent factor or intervening cause wholly disassociated with and remote from the use of the truck" it is generally conceded that the issue of causal relation is not one of proximate cause as in tort law, or whether the vehicle "caused" the accident or injury, but one in the field of contract law, *i.e.*, coverage under the wording of an insurance policy. St. Paul Mercury Ins. Co. v. Huitt; 336 F.2d 37 (6th Cir. 1964); Travelers Ins. Co. v. Employers Cas. Co., 380 S.W.2d 610 (Tex. 1964); Johnson, Drake & Piper, Inc. v. Liberty Mutual Insurance Co., supra.

It thus appears to this court that the "loading and unloading" clause is a phrase of extension of the term "use" as contained in the phrase "arising out of the . . . *use* of any automobile." The problem is that of construing the language of the insurance contract. In so construing such a contract the intention of the parties should control and the terms of the clause should be taken and understood in their plain, ordinary and popular sense. Allstate Ins. Co. v. Valdez, supra; State Automobile & Casualty Under. v. Casualty Under., Inc., 124 N.W.2d 185 (Minn. 1963); Holland v. Crummer Corp., 78 Nev. 1, 368 P.2d 63 (1962); Silver Dollar Club v. Cosgriff Neon, 80 Nev. 108, 389 P.2d 923 (1964).

In determining the intent of the parties a court should consider all the salient facts, including for example: (1) The existence or lack thereof of a causal connection or some reasonable connection between the loading or unloading and the accident or injury; (2) who had control of the goods which were the subject of the loading or unloading; (3) whether the loading or unloading was an active factor in the resulting accident or injury; (4) did any independent factor or intervening cause occur; and, (5) the closeness or remoteness of the connection, if such connection be found, between the truck and the accident.

In the instant case the petroleum product spewing from the drum lacks causal connection with the loading of the truck and even if this were doubtful certainly the act of Appellant's agent in turning off the gasoline pump motor and the consequent spark and ignition is devoid of causal connection. The drum containing the explosive product and the gasoline motor which was the source of ignition were wholly within the control of the Appellant's agent Bernard Spink and not the truck driver. The most that can be said of the truck and its driver were that they were waiting for the loading to commence. No act on the part of the driver occurred other than that he was there. The existence of flammable vapors and the ignition thereof constituted an intervening cause wholly disassociated with the loading of the truck and as such were too remote from the loading to be said to be within the contemplation of the contracting parties.

The trial court's findings of fact related to the issues existing

between the original parties and no findings of fact are included as regards the Third Party Defendant, Hartford, nor was any requested. Under these circumstances this court may presume that the trial court found the necessary facts to support its judgment. On the material matters relating to the Third Party Defendant there is substantial evidence to support its contentions and the judgment of the court. In the absence of express findings, the law implies findings in favor of the judgment. Chisholm v. Redfield, 75 Nev. 502, 508, 347 P.2d 523 (1959); Edwards v. Jones, 49 Nev. 342, 352, 246 P. 688 (1926); Moore v. Rochester W. M. Co., 42 Nev. 164, 179, 174 P. 1017 (1918). Findings are not jurisdictional and the absence of findings may be disregarded by the appellate court if the record is so clear that the court does not need their aid. Hurwitz v. Hurwitz, 136 F.2d 796 (D.C.Cir. 1943); United States v. Pendergrast, 241 F.2d 687 (4th Cir. 1957); Asch v. Housing & Redevelop. Authority of St. Paul, 97 N.W.2d 656 (Minn. 1959); Graham v. United States, 243 F.2d 919 (9th Cir. 1957); Merrill v. Merrill, 362 P.2d 887 (Idaho 1961); Janzen v. Goos, 302 F.2d 421 (8th Cir. 1962).

Lastly appellant contends that the method used in determining damages was erroneous. Evidence was presented and received relative to the cost of repairs which would be necessary to restore the building to its former condition less depreciation. This was the only evidence offered at the trial.

We are not at all convinced that the court erred in this regard. Many courts in insurance cases favor this method as the test for arriving at the actual cash value of a building. Burkett v. Georgia Home Ins. Co., 58 S.W. 848 (Tenn. 1900); see also, Annot., 61 A.L.R.2d 706.

In any event appellant offered no evidence in opposition and the objections made to respondents proof of damages were immateriality, lack of foundation, lack of reasonableness and that there was no showing that the building was restored. No objection was made to the criterion used.

This court has consistently refused to review issues first raised on appeal. Karns v. State Bank & T. Co., 31 Nev. 170, 101 P. 564 (1909); State v. Jukich, 49 Nev. 217, 242 P. 590 (1926); Kelley v. State, 76 Nev. 65, 348 P.2d 966 (1960); State v. Shaddock, 75 Nev. 392, 344 P.2d 191 (1959).

The judgments of the district court are hereby affirmed.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.