Filed 8/31/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Estate of RAMSEY WALTER EL WARDANI, Deceased. | |
| JANINE WHITE EL WARDANI,<br><br>Petitioner and Appellant,<br><br>v.<br><br>ALEXANDRIA EL WARDANI, as Administrator, etc.,<br><br>Objector and Respondent. | D079406<br><br><br>(Super. Ct. No. 37-2017-00031536-PR-LA-CTL) |


APPEAL from an order of the Superior Court of San Diego County, John B. Scherling, Judge.  Affirmed.

James Michael Hester for Petitioner and Appellant.

Chhokar Law Group, Kimberley Victoria Deede and Gian Ducic-Montoya for Objector and Respondent.

Ramsey Walter El Wardani died intestate in 2016 and was survived by his wife Janine and daughter from a previous marriage, Alexandria (Ali).[1] Four years into a protracted probate dispute between Janine and Ali, the court removed Janine as court-appointed administrator of Ramsey's estate. It deemed her ineligible to serve in that role because it found that she was not a United States (U.S.) resident as required by section 8402, subdivision (a)(4) of the Probate Code.[2]

Emphasizing her numerous ties to California, Janine appeals her removal as administrator of her deceased husband's estate. But as we explain, the court reasonably rejected her claim to U.S. residency despite those ties. Janine sold her home in California and moved with Ramsey to Mexico in 2014 intending to retire there. She remained in Mexico "full time" for two years until Ramsey's death. Although she returned to California for visits thereafter, she did not relocate or plan to move back to the U.S. until the probate case was over. On these facts, the court reasonably found that she was not a U.S. resident within the meaning of section 8402 and did not abuse its discretion in removing Janine as administrator. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A year after Ramsey died intestate in August 2016, Janine petitioned for letters of administration. She checked the box on mandatory Judicial Council form (DE-111) indicating that she was a California resident and listing a P.O. Box in Bonsall as her address. Claiming Ramsey had

---

[1]    Because all parties in this action share a common last name, we refer to them by first name for clarity, intending no disrespect.

[2]    Further undesignated statutory references are to the Probate Code.

misappropriated her separate property, Janine also filed a $285,000 creditor's claim.

In December 2017, the probate court appointed Janine as administrator with limited authority to administer the estate. Janine was required to post a $250,000 bond and could not sell, exchange, or encumber estate property. Janine filed a partial inventory and appraisal in December 2018 listing a 50 percent community property stake in five condominiums she and Ramsey owned and rented as landlords.

Janine's letters of administration expired in June 2019 pursuant to a local rule (Super. Ct. San Diego County, Local Rules, rule 4.8.1(A)). Three months after her letters of administration expired, Janine allowed her own creditor's claim, purporting to be the estate's personal representative. Her attached creditor's declaration claimed $281,867 from Ramsey's estate. Janine claimed that only after his death did she discover that Ramsey lived a double life, misappropriating her separate property assets.

This 2019 declaration contained several factual allegations that would later be used by the court to reject her U.S. residency. Janine explained that she married Ramsey in 2009 and lived in Carlsbad. Ramsey managed the couple's finances, although each maintained separate property assets from before their marriage. Ramsey wanted to retire in Mexico to live a quieter life, and the couple began searching for properties in Baja California Sur. Janine sold her separate property home in Carlsbad to facilitate their move. She purchased a home in Baja California Sur, Mexico using proceeds from the Carlsbad sale. Janine moved in October 2014 "and lived in that home full time." Over the next two years, Ramsey left her in Mexico alone for up to a month at a time while allegedly using proceeds from her Carlsbad residence "like his own personal bank account." All the while, Janine "was setting up

3

the home in Baja, trusting that [her] 'nest egg' was safe."  Janine referenced the couple's "condo rental business" in passing but did not mention any residence outside the one in Mexico.

The trial court approved Janine's creditor's claim for $281,867 in November.  Ali moved to set that order aside, and the court granted her request in January 2020.  It noted that Janine's letters of administration had expired when she purported to allow her own creditor's claim.  Mistakenly believing Janine still had authority as administrator, the court erred in approving that claim.  Compounding this error, Janine failed to serve notice of the hearing on Ali or any other heir, meaning the court allowed her creditor's claim without hearing from any heir or an authorized personal representative.  The court cautioned Janine that her letters of administration had expired and that reissuance was "not a foregone conclusion."

After the set aside ruling, Janine filed a document captioned, "First Annual Report and Status of Administration; Request to Allow Ongoing Administration of this Estate; and Request for Extension of Letters of Administration."  Janine explained that she needed additional time to determine the character of the five rental properties and identify other assets and personal property subject to probate.  Acknowledging the delay, Janine explained that estate administration had revealed "financial misappropriations, concealed assets and questionable trusts, unknown creditors and income tax potential liability going as far back as 2009"—all of which "has made the administration challenging and time consuming."  She hoped to render an accounting and conclude her administration within a year.  Accordingly, she asked the court to extend her letters of administration through July 2021.

4

The hearing on Janine's request was repeatedly continued. Citing her shortcoming in estate administration, Ali asked the court not to reissue Janine's letters and instead appoint Ali as administrator. The parties appeared before Judge Scherling on June 11, 2021 on Janine's petition for reissued letters and Ali's competing petition for letters. Following an unreported hearing, the court requested supplemental briefing on the issue of Janine's residency.[3] Pursuant to section 8402, subdivision (a)(4), only U.S. residents are competent to serve as personal representative of an estate unless named as executor in a will.

In her supplemental brief, Ali argued that residency was "synonymous with domicile" for purposes of the Probate Code. Although Ali had been under the impression that she lived in Bonsall, California, Janine informed the court at the June 11 hearing that she had never lived there and that the address provided was her brother's. Summarizing testimony offered at the June 11 hearing and Janine's past declarations, Ali maintained that Janine resided in Mexico and was statutorily barred from serving as estate administrator.

Citing taxation cases construing state residency, Janine reasoned that residency means the place a person is most closely connected to. She filed a declaration describing her many ties with the U.S. While she owned a home in Mexico, she was not a citizen there and had no intention of becoming a citizen or Mexican resident. She grew up in California; all her friends and both her children lived there, as did her extended family. She had a California driver's license, voted and paid income taxes in California and filed

---

[3] Without a record of proceedings, we cannot be certain what transpired. Janine argues on appeal that the court was poised to deny Ali's petition for letters until her counsel made a statement to the effect that Janine was not a U.S. resident.

federal income taxes in the U.S. Her bank accounts were in San Diego, and she had not opened any accounts in Mexico. Her medical providers, accountant, and attorneys were all in California. Since 2016, Janine received mail solely through a P.O. Box in California and did not receive mail in Mexico. According to Janine, the only reason she stayed in Mexico was because she owned a house there free and clear where she could live inexpensively. Claiming Ramsey's actions placed her "in a state of financial limbo" since his death, she stated she would sell her home in Mexico and return to the U.S. as soon as the probate case ended.

Ali filed a responsive supplemental brief. She noted that Janine's September 2019 declaration supporting her creditor's claim confirmed her Mexico residency. It was only when faced with disqualification that Janine took the position that she resided in California. Ali argued that Janine's reliance on taxation cases was misplaced given case authority interpreting residency synonymously with domicile under the Probate Code. Whatever her California ties, Ali stressed that Janine had resided in her Mexico home since 2014 and only intended to return to California once probate proceedings *ended*.

The court considered the two motions together on August 9, 2021—Janine's request to continue as administrator and Ali's request to be appointed administrator.[4] Before the hearing, the parties stipulated that both petitions could be resolved based on the declarations of record, with no new declarations filed. At the start of the hearing, the court delivered its

---

[4] Although Janine's letters of administration had expired pursuant to a local rule, the court had held that she remained administrator of the estate pursuant to the Probate Code. Expiration of the letters merely suspended Janine's authority, meaning there was no vacancy in the office of the administrator unless Janine was first removed.

tentative ruling removing Janine as administrator.  The written tentative raised questions as to whether Janine had ever lived in Bonsall as she had claimed.

Arguing against the tentative, Janine highlighted her California ties. Although the couple planned to move to Mexico to retire, Ramsey never actually retired and lived a double life in San Diego.  Janine planned to return after he died once the probate case concluded and never expected the case to go on for four years.  According to Janine, the mere fact that she slept in Mexico more nights than she did in the U.S. did not change her place of residence.  It was Janine's position that she had never left California.  She maintained her bank accounts, investment property, and driver's license in California and intended to return as soon as the probate case ended.  To the extent the court entertained doubts as to whether Janine had ever lived in Bonsall as indicated in prior filings, Janine could testify on that issue.

Ali's counsel urged the court to confirm its tentative ruling.  She reasoned that Janine's "change in intention, based on a change of circumstances, does not change where one lives and one has moved to and where one owns a home."  Counsel further suggested that the probate case had dragged on because of Janine's shortcomings and delays as administrator.  No new testimony was warranted given the parties' stipulation to decide the matter on declarations; nor would it affect the outcome.  Ali argued that Janine owned a home in Mexico and lived there for years, making her a Mexican resident for purposes of probate proceedings.

Agreeing with Ali, the court modified the tentative ruling only slightly, omitting credibility questions concerning Janine's alleged prior residence in Bonsall.  It viewed Janine's 2019 creditor's declaration as more credible than her more recent declaration on residency.  But even in the more recent

declaration, Janine stated, "As soon as the case is over, I will sell my home in Mexico and return to live permanently in the United States." Based on this statement, the court inferred that Janine had no intention of living in the U.S. during the administration of the estate. Concluding Janine was not a U.S. resident competent to serve as administrator under section 8402, it removed her. And with the position now vacant, the court proceeded to appoint Ali as administrator with limited authority, requiring her to post bond.

A more detailed ruling followed in the court's written order. It began by acknowledging that as the party seeking her removal, Ali bore the burden of proving grounds for removing Janine as administrator. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 103 (*Sapp*).) Noting that section 8402, subdivision (a)(4) required that an administrator be a "resident of the United States," the court turned to case law to construe that phrase. More recent cases were not helpful because nonresidency was conceded. (See *Estate of Heath* (2008) 166 Cal.App.4th 396, 401 (*Heath*) [stating in passing that decedent's German sisters were "ineligible for appointment as administrators because they [did] not reside in the United States"]; *Estate of Damskog* (1991) 1 Cal.App.4th 78, 81 (*Damskog*) [decedent's Norwegian sisters were not entitled to appointment as administrator themselves and therefore could not nominate an administrator].) Accordingly, the court turned to much older cases that construed a prior version of the statute requiring *California* residency. Although residence is not necessarily synonymous with domicile (see *Smith v. Smith* (1955) 45 Cal.2d 235, 239 (*Smith*)), these cases seemed to equate the two in the probate administration context.[5]

---

[5] To avoid repetition, we explore cases cited by the probate court in our discussion.

The court reasoned that "resident of the United States" under section 8402 was either synonymous with domicile or permitted something more temporary. Under either construction, it believed by a preponderance of the evidence that Janine was not a resident. The court deemed Janine's 2019 declaration "more reliable [than] her [more recent] declaration regarding residency" because her residency was not then at issue. It went on to conclude:

> "Based on the declaration in support of the creditor's claim, it appears that Janine and Decedent had a plan to retire in Mexico, and pursuant to that plan they bought a house in Mexico and moved there in October 2014. Janine states that she lived there 'full time,' and she does not mention moving to a subsequent address in the declaration in support of the creditor's claim or in her residency declaration. Accordingly, it appears that Janine changed her residence and domicile to Mexico in October of 2014. [¶]

> "Although the retirement plan may not have worked out as Janine wanted, and although she states that she wants to return to the United States, there is no indication that she has moved back to the United States. Instead, it appears that she has lived in Mexico for the past seven years. While she may have substantial connections to the United States, there is no evidence showing that she has changed her residence or domicile back to the United States. Her claim that she has spent 252 days in the United States in 2019 and 2020 only amounts to 34.5% of those two years. Additionally, even in her more recent declaration Janine states: '[a]s soon as the probate case is over, I will sell my home in Mexico and return to live permanently in the United States.' (ROA 160, ¶ 10.) This statement indicates that Janine has no intention of living in the United States during the administration of the estate. These circumstances are similar to [*In re Estate of Weed* (1898) 120 Cal. 634 (*Weed*)], in that Janine lost her resident and domicile status when she moved to Mexico in 2014, and she has not regained resident or domicile status

9

in the United States because she still has not moved back."

## DISCUSSION

Janine argues the trial court abused its discretion in removing her as administrator of Ramsey's estate. Focusing on taxation cases construing California residency, she maintains that she is a resident based on her significant and continuing ties to the U.S. But as we explain, even if we accept that residency under section 8402 does not require U.S. domicile, substantial evidence supports the court's factual finding that Janine merely visited the U.S. on a temporary basis after moving to Mexico in 2014 without ever *residing* here. Accordingly, there was no abuse of discretion in ordering her removal.

A.    *The standard of review.*

We review the probate court's order removing Janine as administrator for abuse of discretion.[6] (*Sapp, supra,* 36 Cal.App.5th at p. 103.) In applying this standard "the deference it calls for varies according to the aspect of a

---

[6]    As a threshold matter, Ali suggests the appeal should be dismissed for failure to properly identify an appealable order. (See *Sapp, supra,* 36 Cal.App.5th at p. 98.) But the notice of appeal makes clear that Janine is appealing an order removing her as the estate administrator. "Orders removing a personal representative and revoking the letters of administration issued to the personal representative are appealable." (*Id.* at p. 99; §§ 1300, subd. (g), 1303, subd. (a).)

We likewise reject Janine's suggestion that laches or equitable estoppel prevented Ali from challenging her residency several years into the probate case. As Ali points out, such fact-intensive arguments cannot be raised for the first time on appeal. (*Prang v. Los Angeles County Assessment Appeals Bd. No. 2* (2020) 54 Cal.App.5th 1, 18 [laches]; *Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6 [equitable estoppel].) Nor does Janine explain how she was prejudiced or relied to her detriment where any delay by Ali merely gave her more time to administer Ramsey's estate.

10

trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) Thus, we independently construe the meaning of "resident" in section 8402, subdivision (a)(4). We then determine whether substantial evidence supports the court's factual finding that Janine was not a resident of the U.S. under that definition. Reversal is compelled only if under all the evidence, viewed in the light most favorable to the court's order, no judge reasonably could have reached the same result. (*Sapp,* at p. 104.)

B.   *A "resident of the United States" is someone who actually lives in the United States, not someone who temporarily visits.*

In probate proceedings, the court appoints a personal representative to administer the decedent's estate. "That person or firm ordinarily is (a) an 'executor' named as such in the decedent's will, (b) a successor to that executor, called an 'administrator-with-the-will-annexed,' or (c) an 'administrator' where the decedent died without a will naming an executor." (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 894, fn. 1; see *Heath, supra,* 166 Cal.App.4th at p. 400; § 8460, subd. (a).) An executor or administrator must preserve the estate, discharge debts, and distribute the residue to beneficiaries under the will or pursuant to the statutory rules governing intestate succession. (*Sapp, supra,* 36 Cal.App.5th at p. 102; *Heath*, at p. 401.)

Section 8402 defines eligibility requirements for personal representatives. As relevant here, "a person is not competent to act as personal representative . . . [if] [t]he person is not a resident of the United

11

States." (§ 8402, subd. (a)(4).)[7] The word "resident" is not defined in the Probate Code. Janine suggests the term impliedly refers to the location that the person is most closely connected to, and she highlights her numerous ties to California. Ali, by contrast, argues that residency is synonymous with domicile—"residency involves a person's physical presence in a particular place with the intention to make that place one's home."

To evaluate these competing claims, we begin by tracing the statutory history. The residency requirement was first introduced to the probate administration statutes in 1878 through an amendment to former section 1369 of the Code of Civil Procedure. That statute provided that "[n]o person is competent or entitled to serve as administrator or administratrix who is . . . Not a bona fide resident of the State." (Former Code of Civ. Proc., § 1369; Stats. 1877, ch. 585, § 3; see *In re Estate of Beech* (1883) 63 Cal. 458, 459; *In re Estate of Martin* (1912) 163 Cal. 440, 442.)[8] In 1931, the statute was repealed and recodified as former section 420 of the Probate Code without substantive change, barring anyone from serving as administrator "who is not a bona fide resident of this state." (Stats. 1931, ch. 281, § 420, pp. 607–608; see *In re Estate of Pascoe* (1966) 242 Cal.App.2d 85, 87.)

Further changes came in 1980, when section 420 was relaxed to require only *U.S.* residency. As initially introduced, the proposed bill deleted the

---

[7] This residency requirement does not apply to executors named in a will. (See § 8402, subd. (b).)

[8] Previously, the statute provided that an administrator could not be "1. Under the age of majority; 2. Convicted of an infamous crime; 3. Adjudged by the Court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity." (Former Code Civ. Proc., § 1369, as enacted in 1872.) California residency was added as a fourth requirement in the 1877 to 1878 term.

residency requirement altogether.  (Assem. Bill No. 2985 (1979–1980 Reg. Sess.) § 12, Mar. 6, 1980.)  A committee report explained that the legislation "would delete the requirement of residence in California for administrators and provide for substitute service on the Secretary of State for non-resident administrators."  (Assem. Ways and Means Com., Rep. on Assem. Bill No. 2985 (Apr. 9, 1980) p. 2.)  But in the next revision, the bill required a personal representative be "a resident of the United States."  (Sen. Judiciary Com, Analysis of Assem. Bill No. 2985 (1979–1980 Reg. Sess.) § 12, as amended Apr. 15, 1980.)  Through this language, the amendment "authorize[d] nonresidents of California to serve as administrators as long as they [were] residents of the United States."  (Legis. Counsel, Rep. on Assem. Bill No. 2985 (1979–1980 Reg. Sess.) Aug. 29, 1980, p. 3.)

Following the 1980 amendment, former section 420 read:  "No person is competent to serve as an administrator or administratrix who is not a resident of the United States . . . ."  (Stats. 1980, ch. 955 (Assem. Bill No. 2985) § 12, p. 3015.)  This statute was repealed and recodified in 1990 as section 8402, subdivision (a)(4) and has remained substantively unchanged since.  (See generally, *Damskog, supra,* 1 Cal.App.4th at pp. 80–81 [discussing legislative history]; see also *Heath, supra,* 166 Cal.App.4th at p. 401.)

Although the 1980 amendments revised the geographic scope and no longer insisted that residency be "bona fide," the statute has at all times required that a personal representative be a "resident," first of California and later of the U.S.  With no recent case authority on point, older cases construing that word in evaluating California residency appropriately guide our construction.  For example, California residency was established in *In re Estate of Gordon* (1904) 142 Cal. 125 by a decedent's brother who sold his

13

property in Massachusetts, came to California intending to make it his permanent home, and "resided here continuously for some six years past" before his sister's death. (*Id.* at p. 128.) By contrast, several cases rejected California residency where the proposed administrator merely *intended* to relocate to California but did not yet live here. (*In re Estate of Donovan* (1894) 104 Cal. 623, 625–626 (*Donovan*) [decedent's brother did not establish residence by coming from Massachusetts to California for three days and stating his intent to remain]; *Weed, supra,* 120 Cal. at p. 639 [decedent's niece lost her California residency when she and her husband "moved east, taking with them all of their property, and established a residence there which they maintained for nearly five years"]; *Estate of Barnes* (1921) 187 Cal. 566, 568−569 [decedent's father did not establish California residency through his intent alone where he came in haste from Illinois, bringing no property with him, and could not immediately relocate].)[9]

Equating "residence" with "domicile," *Weed* explained that when a person moves to another place intending to remain there indefinitely, that place " 'becomes his place of residence or domicile, notwithstanding he may have a floating intention to return to his old residence at some future time.' "

---

[9]    A contrary result was reached in *In re Estate of Newman* (1899) 124 Cal. 688 based on the procedural posture and standard of review. The decedent in *Newman* had moved to California and lived there for 40 years while his wife remained in New Hampshire. On his death, his surviving spouse sought to be named administrator of his estate, claiming she came to California because her husband had left an estate and, having arrived, intended to remain. Distinguishing *Donovan, supra,* 104 Cal. 623, the Supreme Court found this sufficient to establish California residency because the trial court had credited her testimony as to her relocation and intent to remain.

(*Weed, supra,* 120 Cal. at p. 639.)[10]  Accordingly, a decedent's niece who had left San Francisco with her husband, moved to Connecticut, and lived there for nearly five years while her husband worked on an invention, was not a California resident despite their stated intention to return.  (*Weed,* at p. 639.)  "She left her husband at their home in the east and would not have come [to California] at that time if her uncle had not died."  (*Ibid.*)  Nor did she regain her California residence immediately on her return to administer her dead uncle's estate.  "To be a *bona fide* resident of the state one must really and in good faith have established a home or other place of residence therein, where he lives, and to which when away on business or pleasure he returns."  (*Id.* at p. 640.)

In short, early cases equated residency with domicile:  those who were not domiciled in California could not serve as estate administrator.  The Legislature recodified the original statute multiple times over the past hundred and forty years.  Although it expanded eligibility to *U.S.* residents and deleted the "bona fide" modifier, it did nothing to abrogate the long line of cases construing "resident" to mean "domicile."  "When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it."  (*Heath, supra,* 166 Cal.App.4th

---

10      *Weed* relied in part on the definition of residence in repealed section 52 of the Political Code, now codified in substantially the same form at section 244 of the Government Code.  (See *Weed, supra,* 120 Cal. at p. 638.)  Equating residence with domicile, this statute explains that a person's residence "is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose," "cannot be lost until another is gained," and "can be changed only by the union of act and intent."  (Gov. Code, § 244.)

at p. 402; see also *In re Marriage of Amezquita & Archuleta* (2002) 101 Cal.App.4th 1415, 1421.)[11]

To be sure, residency and domicile are not *always* synonymous. Although cases sometimes use the words interchangeably, " 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn," whereas domicile is more comprehensive, including "both the *act* of residence and an *intention* to remain." (*Smith, supra,* 45 Cal.2d at p. 239.) "[A] person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time." (*Ibid.*) To determine the meaning of "residence," it is necessary to look at the purpose of each act. (*Id.* at p. 240.) For example, as the Supreme Court observed in *Smith*, residence is synonymous with domicile in construing the Probate Code's venue statute. (*Id.* at p. 239, citing *Estate of Glassford* (1952) 114 Cal.App.2d 181, 186 (*Glassford*).)[12] By contrast,

---

[11]    Cases suggest that the residency requirement aims to ensure that administrators "reside in the United States where the probate court can exercise personal jurisdiction over them, if need be, as they perform their duties." (*Damskog, supra,* 1 Cal.App.4th at p. 82.) Yet, even as personal jurisdiction jurisprudence has evolved, the statute has always used the word "resident" without abrogating cases construing this term to mean "domicile."

[12]    Former section 301 (repealed by Stats. 1988, ch. 1199, § 40) made venue proper where a decedent *resided*. Cases applying that statute construed residency to mean "domicile." (*Glassford, supra,* 114 Cal.App.2d at p. 186; *Estate of Brace* (1960) 180 Cal.App.2d 797, 802; *Estate of Phillips* (1969) 269 Cal.App.2d 656, 659.) Section 7051 (added by Stats. 1988, ch. 1199, § 80.5) restated former section 301 without substantive change but substituted "domicile" for "residence" to codify existing case law. (See Cal. Law Revision Com. com., 53A West's Ann. Cal. Prob. Code, foll. § 7051, p. 23; Recommendations Relating to Probate Law (Nov. 1987) 19 Cal. Law Revision Com. Rep. (1988) p. 941.) Interestingly, no similar change was made as to the residency requirement in section 8402, subdivision (a)(4).

residency takes on a more factual meaning in other statutes, "contemplating an actual, as distinguished from a constructive or legal residence." (*Smith,* at pp. 239–240.)

An argument could be made that section 8402, subdivision (a)(4) continues to require domicile given numerous recodifications that did not abrogate early cases. We need not resolve that question here. Even if we assume that deleting the "bona fide" modifier in 1980 somehow relaxed statutory requirements, the statute at all times required actual residence rather than temporary or transitory presence in the U.S. Despite any stated intent to return, a person is ineligible to serve as administrator who leaves the U.S. and sets up a residence abroad intending to remain indefinitely. (See, e.g., *Weed, supra,* 120 Cal. at p. 639.) Taking this analysis one step further for purposes of this case, where a person does not *actually live* in the U.S., her connections to this country cannot alone establish residency.

Janine's taxation cases support this reasoning. For purposes of state income tax, a resident includes someone who is in California "for other than a temporary or transitory purpose." (Rev. & Tax Code, § 17014, subd. (a)(1).) In each of those decisions, California residency was found as to taxpayers who actually lived in California but also had a residence in another state, were domiciled elsewhere, or intended to relocate outside California in the future. (*Whittell v. Franchise Tax Bd.* (1964) 231 Cal.App.2d 278, 286 [residence was established as to couple that lived in California nine months of every year, owned property in the state, and had significant family and business connections here]; *Peringer v. Franchise Tax Board* (1980) 105 Cal.App.3d 514, 517 [despite taxpayer's Washington domicile, residence was established where he worked and lived in California in a position that he conceded might last indefinitely]; *Noble v. Franchise Tax Bd.* (2004) 118

17

Cal.App.4th 560, 569 (*Noble*) [residence established as to persons living in California who intended to relocate to Colorado but had yet to do so].)

Although these cases highlighted a taxpayer's California contacts in establishing state residency, Janine does not cite—nor have we found—a case finding California residency based *solely* on such ties as to a taxpayer who lives "full time" outside California and maintains no residence in the state. As applicable tax regulations explain, "If an individual acquires the status of a resident by virtue of being physically present in the State for other than temporary or transitory purposes, [she] remains a resident even though temporarily absent from the State. *If, however, [she] leaves the State for other than temporary or transitory purposes, [she] thereupon ceases to be a resident.*" (Cal. Code Regs., tit. 18, § 17014(a), italics added.)[13] The cases prioritize a taxpayer's physical presence over subjective intent in determining residency. (*Noble, supra,* 118 Cal.App.4th at pp. 567−568.)

In short, as a matter of law, a resident of the U.S. under section 8402, subdivision (a)(4) is a person who actually lives in the U.S. and is not merely

---

[13]    Although it is a fact-specific question whether a person is in California temporarily so as to avoid income tax, generally speaking, "[I]f an individual is simply passing through this State on [her] way to another state or country, or is here for a brief rest or vacation, or to complete a particular transaction, or perform a particular contract, or fulfill a particular engagement, which will require [her] presence in this State for but a short period, [she] is in this State for temporary or transitory purposes, and will not be a resident by virtue of his presence here." (Cal. Code Regs., tit. 18, § 17014(b).)  By contrast, if a person is in this state for "a relatively long or indefinite period to recuperate [from illness], or [she] is here for business purposes which will require a long or indefinite period to accomplish, or is employed in a position that may last permanently or indefinitely, or has retired from business and moved to California with no definite intention of leaving shortly thereafter, [she] is in the State for other than temporary or transitory purposes, and, accordingly, is a resident taxable upon [her] entire net income even though [she] may retain [her] domicile in some other state or country." (*Ibid.*)

present temporarily.  U.S. residency is not established by mere connections alone.

C.    *Substantial evidence supports the court's finding that Janine did not reside in the United States.*

The trial court concluded that "regardless of whether the court finds that 'resident' in section 8402 is synonymous with 'domicile,' or . . . has a more temporary meaning than domicile . . . the preponderance of the evidence establishes that Janine is not a resident of the United States under either interpretation of the term."  Substantial evidence supports that finding.  The court found Janine's 2019 creditor's declaration more reliable than her 2021 residency declaration because it was filed before her residency was at issue, "so it is likely that she was more honest about where she lived and her intentions."  Based on that declaration, it determined that Janine lived in Mexico "full time" since October 2014, when she and Ramsey moved there to retire.  Her substantial connections to the U.S. did not amount to a change of residence.  By her own account, she spent only a third of the days over the past two years in the U.S. and did not intend to move back until after the probate case was over.  Likening the case to *Weed, supra*, 120 Cal. 634, the court found that Janine lost her U.S. residency on moving to Mexico in 2014 and had not regained it because she had yet to establish a residence in the U.S.

Janine faults the court's credibility finding, arguing "there is no basis to say one [declaration] was more credible than another."[14]  But under substantial evidence review, appellate courts defer to a trial court's

_____

[14]    We disregard Janine's separate objection to language in the court's *tentative* ruling regarding her credibility, which the court addressed at the hearing and removed from its final order.

19

credibility determinations "whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479; accord *People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. 7.) Nor was the trial court's credibility finding "a clear abuse of discretion" where the court logically credited the declaration filed by Janine at a time when her residency was not at issue. Even otherwise, although the court discounted Janine's 2021 declaration, it did not ignore her substantial U.S. ties in reaching its decision.

Even if we give equal weight to all the evidence presented, the record amply supports the court's finding that Janine was not a U.S. resident. Janine's 2019 declaration stated that she and Ramsey lived in Carlsbad after they got married. In 2013, they started searching for a home in Baja California Sur, Mexico, where Ramsey hoped to retire and live a quieter life. They found one in 2014, and Janine sold her separate property home in Carlsbad to facilitate their move. She financed their new home in Baja California Sur, Mexico exclusively with the proceeds from the sale of her Carlsbad home, anticipating retirement. She then moved into the Mexico home in October 2014 and "lived in that home full time."

From 2014 to 2016, Janine claimed that Ramsey lived a double life in San Diego, leaving her for a month at a time and spending her nest egg. She only discovered these transactions after his death—in the interim, she "was located at our Baja California[ ] Sur[,] Mexico [home] full time," "setting up the home in Baja" while Ramsey traveled alone to San Diego. Even in this declaration filed three years after Ramsey's death, Janine gave no indication in that declaration that she had left Mexico.

In her 2021 declaration, Janine asserted that she "frequently come[s] to the United States (252 days in 2019 and 2020)" and noted several contacts

20

and ties in California. She stated that she grew up in California and has family here, holds a California driver's license, voted in San Diego County (including in 2016, 2018, and 2020), maintained medical providers and attorneys in California, and held bank accounts and paid taxes in California. Janine disavowed any intent to become a permanent resident or citizen of Mexico, explaining that she stayed in Mexico on a tourist visa and did not speak fluent Spanish. Yet in that same declaration, Janine confirmed that she still owned a home in Mexico. The only reason she stayed there was because "[she] own[ed] a house there, free and clear, where [she could] live inexpensively." She claimed her plan was to "sell [the] home in Mexico and return to live permanently in the United States" *after* the probate case was over.

At best, while Janine had many contacts with the U.S. and visited frequently, there was no evidence that she actually lived anywhere but Mexico since moving there in 2014. Her bank accounts, doctors, and family gave her several reasons to *visit* California, but those visits did not establish residency on their own. Janine was not a person who lived in California and temporarily found herself in Mexico, but rather someone who lived in Mexico and made frequent but temporary visits to the U.S. Accordingly, sufficient evidence supports the court's finding that Janine was not a "resident of the United States" as required by section 8402, subdivision (a)(4), and there was no abuse of discretion in ordering her removal as administrator of Ramsey's estate.[15]

---

[15] Given our decision, we need not reach Ali's alternative argument that there were other grounds not considered by the trial court that would have supported Janine's removal as estate administrator.

## DISPOSITION

The order removing Janine as administrator is affirmed.  Respondent is entitled to costs.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


BUCHANAN, J.